James STEWART, Defendant, Appellant,

v.

STATE of Delaware, Plaintiff, Appellee.

Supreme Court of Delaware.

Submitted Nov. 13, 1979.

Decided Dec. 7, 1979.

Neal A. Phillips, Wilmington, for defendant-appellant.

Timothy H. Barron, Deputy Atty. Gen., Wilmington, for plaintiff-appellee.

Before DUFFY, QUILLEN and HORSEY, JJ.

DUFFY, Justice:

James Stewart (defendant) was convicted in the Superior Court of Attempted Rape, First Degree, 11 *Del.C.* §§ 531 and 763; Kidnapping, 11 *Del.C.* § 783; Robbery in the First Degree, 11 *Del.C.* § 832; Possession of a Deadly Weapon During the Commission of a Felony, 11 *Del.C.* § 1447; Burglary in the Second Degree, 11 *Del.C.* § 825; and Offensive Touching, 11 *Del.C.* § 601.

The issue on appeal is whether a police officer violated defendant's Fourth Amendment rights by stopping and searching him.

I

The facts are these:

On May 16, 1978, a lady was attacked and robbed at knife point in her home by an assailant who also attempted to rape her. The lady gave the following description of the attacker to the police: he was a thinly-built, 6′ 2″ black male, in his twenties, with a gap between his front teeth; he wore a knit cap, a gold necklace and a gold digital watch.

Ten days after the assault, Police Officer Tabor was participating in a search, in an assigned area, for the perpetrator of two attempted rapes, including the one charged in this case. Officer Tabor was aware of the suspect's description (as outlined above) and he had seen a composite drawing of the assailant. While so assigned, the Officer saw defendant walking on the Market Street Mall in Wilmington. The Officer observed that defendant matched the description of the suspect and that his facial features were similar to those depicted in the composite drawing; and defendant was wearing a knit cap. The Officer stopped defendant, asked his name and address and where he was coming from.[1] Defendant produced a driver's license indicating that his name was "Jimmy Stewart." The Officer also knew that in one of the rapes, the suspect's first name was believed to be "Jimmy." While speaking with defendant, the Officer observed that he was wearing a gold necklace and a gold digital watch. He also noticed that there was a gap between two of defendant's front teeth.

Because defendant matched the description of the assailant, Officer Tabor decided to detain him. He so informed defendant and, because a knife had been used in each rape, conducted a limited pat-down. During the search, the Officer found a stainless steel locking-type knife in defendant's right front pocket. Upon finding the knife, the Officer arrested defendant for carrying a concealed dangerous weapon and then took him to the police station where he was placed in a line-up.

The victim and a witness who had been in the area of the attempted rape identified defendant as the assailant, and both of them again identified him during the trial. In addition, the knife taken from defendant

---

1. 11 *Del.C.* § 1902(a) authorized the Officer to stop and question defendant; the Statute reads as follows:

"A peace officer may stop any person abroad, or in a public place, who he has reasonable ground to suspect is committing, has committed or is about to commit a crime, and may demand of him his name, address, business abroad, and where he is going."

was introduced into evidence over his objection. After sentencing, defendant docketed this appeal.

## II

Defendant challenges his convictions on two grounds, which we consider in turn.

### A.

First, defendant contends that the "seizure" of his person by the officer who stopped and searched him was in violation of the Fourth Amendment,[2] which provides in part that

"[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . . but upon probable cause . . . ."

Defendant says that the seizure of his person, ten days after a crime had been committed, solely because he generally matched the suspect's description, did not satisfy Fourth Amendment standards. He argues that the stopping was based neither on probable cause nor articulable facts and, consequently, was unlawful. In addition, he contends that the in-court identification was tainted by the post-arrest line-up, which was a fruit of the illegal seizure.

Defendant's Fourth Amendment interests were implicated from the time he was first stopped by the Officer. *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975). As the United States Supreme Court noted in *Brown v. Texas*, —— U.S. ——, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979): "When the officers detained appellant for the purpose of requiring him to identify himself, they performed a seizure of his person subject to the requirements of the Fourth Amendment." The short of it is that a Fourth Amendment "seizure" was made by Officer Tabor, so we must decide whether it was valid.

In *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 2254, 60 L.Ed.2d 824 (1979), the Supreme Court said this:

"Before *Terry v. Ohio*, 393 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), . . . [t]he standard of probable cause . . . represented the accumulated wisdom . . . as to the minimum justification necessary to make the kind of intrusion involved in an arrest 'reasonable' under the Fourth Amendment. . . .

*Terry* for the first time recognized an exception to the requirement that Fourth Amendment seizures of persons must be based on probable cause. That case involved a brief, on-the-spot stop on the street and a frisk for weapons, a situation that did not fit comfortably within the traditional concept of an 'arrest.' . . . [T]o determine the justification necessary to make this specially limited intrusion 'reasonable' under the Fourth Amendment, the Court balanced the limited violation of individual privacy involved against the opposing interests in crime prevention and detection and in the police officer's safety."

The Court concluded its interpretation of *Terry* by noting:

"Thus, *Terry* departed from traditional Fourth Amendment analysis in two respects. First, it defined a special category of Fourth Amendment 'seizures' so substantially less intrusive than arrests that the general rule requiring probable cause to make Fourth Amendment 'seizures' reasonable could be replaced by a balancing test. Second, the application of this balancing test led the Court to approve this narrowly defined less intrusive seizure on grounds less rigorous than probable cause, but only for the purpose of a pat-down for weapons."

 We hold, under *Dunaway* and *Terry*, that the Police Officer's encounter with defendant (that is, the stop, the detention and the pat-down) was a "seizure" of the less intrusive type to be measured by the "bal-

---

2. The Fourth Amendment is applicable to State action through the Fourteenth Amendment,

*Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

ancing test" standard prescribed by the Court.[3]

 Applying that test, we conclude that the police conduct was reasonable, under Fourth Amendment standards. Stopping defendant on the street was justified in light of his similarity to the suspect's description: defendant's size, physique, race and appearance were all similar to the description given by the victim; so was the knit cap which he wore; and the Officer observed that defendant's facial features were similar to those depicted in the composite drawings. That similarity is not challenged on appeal.

Clearly, in our judgment, stopping defendant under these circumstances was legally permissible police work. And once the stop had been made, further evidence, in plain view of the Officer, confirmed that he was correct in his decision to stop and also provided a basis for further action: Officer Tabor saw that defendant was wearing a gold necklace and a gold digital watch, and he observed the gap in defendant's teeth, and noted that his name was "Jimmy." After all of that, a limited frisk was reasonable, because the suspect had been armed in each of the attempted rapes. *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Terry v. Ohio, supra*. The stop (seizure) shown by this record was "based on specific, objective facts indicating that society's legitimate interests require[d] the seizure of" defendant. *Brown v. Texas, supra*. Defendant's appearance matched in sufficient detail the description of the suspect known to the Police Officer, who certainly had a duty to the community to find and apprehend an alleged felon.

We hold that defendant's Fourth Amendment rights were not violated by what Officer Tabor did. Indeed, his conduct reflected alert and commendable police action. It follows that neither the admission into evidence of the knife nor permitting the in-court identifications to be made was error by the Trial Judge. Cf. *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

**B.**

 Defendant's remaining argument is that permitting the in-court identifications was error because they were based on an unduly suggestive pre-trial line-up. The record shows that the police took scrupulous care to conduct a fair and unsuggestive line-up, and that the line-up was in fact fair.

Affirmed.

---

3. Defendant does not challenge his arrest, once a weapon had been discovered. The appeal is directed to the police action before the arrest.