403 So.2d 453 (1981)
Billy Eugene WILLIAMS, Appellant,
v.
STATE of Florida, Appellee.
No. MM-248.
District Court of Appeal of Florida, First District.
August 10, 1981.
Rehearing Denied September 9, 1981.
Michael J. Minerva, Public Defender, and Harold W. Long, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen., and Miguel A. Olivella, Asst. Atty. Gen., Tallahassee, for appellee.
BOOTH, Judge.
This cause is before us on appeal from judgments of convictions for sexual battery and kidnapping and consecutive sentences of 30 and 50 years. Williams contends the trial court erred in denying his various motions to suppress his confession, photographic and in-court identifications, and tangible evidence.
The victim was abducted at knife point from the parking lot of Sears Catalog Distribution Center around noon on July 14, 1978, and taken to a wooded area, where she was sexually assaulted in a brutal manner. The assailant then drove her back to the Sears employees' parking lot, got into *454 his own vehicle, and left. On the same day, the victim gave police a detailed physical description of her assailant and further told officers that she observed him leave the area in a tomato red Dodge Charger.
On July 18, 1978, Detective Emanuel of the Jacksonville Sheriff's Office met with Sears security officers to inform them of the description of the victim's assailant and his car. The same afternoon, Albert Kubala, a security officer at Sears, observed appellant, who closely resembled the victim's description, in a reddish orange automobile, similar to the vehicle described by the victim, in the employee area of the parking lot. Appellant told Kubala that he needed to see an employee and voluntarily accompanied Kubala to the security office so that the employee could be located. While appellant spoke with the employee in the security office, Kubala called Detective Emanuel and informed him that a man who matched the assailant's description was in his office. Upon his arrival at Sears, Detective Emanuel spoke with appellant in the security office but did not place him under arrest or prevent him from leaving.
Appellant voluntarily agreed to accompany Detective Emanuel to the homicide office in the patrol car. Before getting into the back seat, appellant was patted down, and a "blade knife" removed from his pocket.[1]
On arrival at the police station, Detective Emanuel questioned appellant about his employment and whereabouts on July 14. Appellant indicated that he had been at work until approximately 2:00 p.m. that day. Detective Emanuel then called appellant's employer and was informed that appellant had left the business premises at approximately 11:45 a.m. and had not returned. When Detective Emanuel confronted appellant with the information received from his employer, appellant became very nervous. At this point, Detective Emanuel advised appellant of his Miranda rights,[2] which appellant acknowledged he understood. Appellant then agreed to be photographed, and, shortly thereafter, the victim identified appellant as her assailant from a photographic spread. Appellant was placed under arrest and, after again being advised of his rights, executed a waiver of rights form and confessed to the crime.
Appellant contends that he was subjected to custodial interrogation without receiving Miranda warnings, and that he was detained without probable cause. On this basis, appellant argues that all evidence, including victim identification, the knife, and appellant's statements and confession to the crime, was tainted and should have been suppressed.
We reject appellant's contention that his constitutional rights were violated in this case. The United States Supreme Court, in Miranda v. Arizona, supra, established procedural safeguards protecting an individual's privilege against self-incrimination while in custody or deprived of freedom in any significant way. The prosecution must demonstrate the use of such procedural safeguards before it may introduce any statements stemming from custodial interrogation of the defendant into evidence. Miranda, 384 U.S. at 444, 86 S.Ct. at 1612. However, in Oregon v. Mathiason, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977), the United States Supreme Court held that police officers are not required to administer Miranda warnings to everyone whom they question. In the Mathiason case, the accused was a parolee who had been suggested to the police as a burglary *455 suspect. After several unsuccessful attempts to contact him, a law enforcement officer left a note at Mathiason's residence asking him to call because the officer would "like to discuss something." Mathiason called and agreed to meet at the state patrol office. At their meeting, the officer told Mathiason that he was not under arrest but advised "that the police believed defendant was involved in the burglary and [falsely stated that] defendant's fingerprints were found at the scene." (429 U.S. at 493, 97 S.Ct. at 713) Several minutes later, Mathiason confessed he had taken the property. The officer then advised Mathiason of his Miranda rights and took a taped confession. Mathiason was allowed to return home after his confession. The officer told him the case would be referred to the District Attorney to determine if charges would be brought.[3] The Supreme Court, rejecting the contention that Miranda warnings were not timely given, held (429 U.S. at 495, 97 S.Ct. at 714):
[T]here is no indication that the questioning took place in a context where [Mathiason's] freedom to depart was restricted in any way. He came voluntarily to the police station, where he was immediately informed that he was not under arrest. At the close of a 1/2-hour interview [Mathiason] did in fact leave the police station without hindrance. It is clear from these facts that Mathiason was not in custody or "otherwise deprived of his freedom of action in any significant way."
Such a noncustodial situation is not converted to one in which Miranda applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a "coercive environment." Any interview of one suspected of a crime by a police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer Miranda warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody." It was that sort of coercive environment to which Miranda by its terms was made applicable, and to which it is limited.
In determining "custody," the majority of courts have utilized an objective test, to-wit: whether, under the circumstances, a reasonable person would have believed he was in custody. Note, Custodial Interrogation after Oregon v. Mathiason, 1978 Duke L.J. 1497, 1500 (1979). See generally Hunter v. State, 590 P.2d 888 (Alaska 1979); State v. Perry, 298 N.C. 502, 259 S.E.2d 496 (N.C. 1979). As noted in Hunter (590 P.2d at 895):
The custody determination must be made on a case-by-case basis, but the inquiry, as expressed by the court in United States v. Hall,[[4]] 421 F.2d at 545, is whether:
in the absence of actual arrest something ... [is] said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates [to the defendant] that they would not have heeded a request to depart or to allow the suspect to do so.
This requires some actual indication of custody, such that a reasonable person would feel he was not free to leave and break off police questioning. [footnotes omitted]
In the instant case, appellant testified that he voluntarily accompanied Kubala to the security office and that his conversation there with Detective Emanuel was *456 congenial and unaccompanied by threats, harassment, or coercion. When Detective Emanuel requested that appellant accompany him to the station, appellant also voluntarily agreed. Transportation to the station by use of a police car does not per se add to the coercive aspects of questioning. See Harris v. State, 376 So.2d 773 (Ala.Cr. App. 1979); Calaway v. United States, 408 A.2d 1220 (D.C. 1979). Detective Emanuel testified that appellant was neither informed that he was under arrest nor told he had to remain, and that there was no intent to detain appellant, who was free to leave at any time prior to his formal arrest.
Concerning the pat-down search for weapons prior to appellant entering the police car, we note that appellant was being questioned in connection with a crime committed by an armed and dangerous felon. He and his vehicle resembled closely, but not exactly, the description given by the victim of the crime. The circumstances were sufficient to warrant further investigation but not to support the arrest of appellant at that time. The officer was not required to gamble his life by placing appellant in the patrol car with him without the precaution of a pat down for weapons. See State v. Webb, 398 So.2d 820. Opinion of the Florida Supreme Court rendered May 14, 1981. This was true even though appellant appeared cooperative and voluntarily accompanied the officer. A number of decisions support the right of a peace officer to conduct a pat-down search for weapons, for protection of the officer, prior to placing a person into a police vehicle. Weapons seized in such a search are admissible even though the person subjected to the pat-down search was not under arrest at the time he was placed in the patrol car.[5]
We have considered the other issues raised and find them to be without merit. The overwhelming evidence supports the jury's verdict of guilty of the offenses charged.
AFFIRMED.
McCORD and SHAW, JJ., concur.
NOTES
[1] Appellant testified that he was handcuffed prior to being placed in Detective Emanuel's patrol car. Detective Emanuel did not recall that appellant was handcuffed. Appellant argues that, since his testimony in that regard was not rebutted, the trial court was bound to accept this testimony. We disagree. The trial court could properly reject such testimony as unworthy of credit since appellant's testimony as to other material facts was contradicted. See 32A C.J.S. Evidence § 1038 (1964). Bellman v. Yarmark Enterprises, Inc., 180 So.2d 663 (Fla.3d DCA 1965), cert. dismissed, 188 So.2d 807 (Fla. 1966).
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] Appellant, in the instant case, was not allowed to leave after his confession because, inter alia, of the positive identification by the victim of the crime.
[4] United States v. Hall, 421 F.2d 540 (2d Cir.1969), cert. denied, 397 U.S. 990, 90 S.Ct. 1123, 25 L.Ed.2d 398 (1970).
[5] See Boal v. State, 368 So.2d 71 (Fla.2d DCA 1979) (pat-down search for weapons before placing defendant into police vehicle held valid to insure personal safety of officer while transporting defendant who was under investigation but not arrested; conviction of carrying concealed weapon affirmed); People v. Otto, 91 Mich. App. 444, 284 N.W.2d 273 (1979) (pat-down search for weapons before placing hitch-hiker into police vehicle held valid, even where no cause to arrest existed and no facts indicated that defendant was armed and dangerous). See also Stewart v. State, 409 A.2d 1052 (Del.Super. 1979) (pat-down search of suspect held valid ten days after rape incident, where suspect was similar to victim's description and perpetrator of crime had been armed), cf., Walden v. State, 397 So.2d 368, (Fla. 1st DCA 1981) (patdown improper) where custodial detention under Fla. Stat. § 396.072(1) not valid).