GARRETT, Judge.
The state appeals the trial court’s order that granted appellee’s motion to suppress “based on the officer’s lack of Pounded Suspicion to Conduct an Investigatory Stop of [appellee's] Automobile.” We reverse.
Only Officer Littlefield, a twelve-year police veteran, testified at the suppression hearing. He stated that at about one thirty in the morning on April 9, 1990, he patrolled downtown Fort Lauderdale with his K-9 partner. As he drove by an un-feneed lot located next to a fenced Southern Bell compound, he saw the lower portion of a small vehicle and “a pair of legs” next to the vehicle. He could not see more because over twenty “derelict” tractor trailers vans were parked on the lot and their wheels or supports blocked his view. He “had never seen anyone in that ... lot” and thought “[i]f they [are] hooking up a tractor trailer to leave, there should [be] a tractor hook up to the trailer.” He knew that “there [was] generally no one around at that time.” He felt “there was probably some type of crime going on, either a burglary of those [tractor trailer vans] or possibly the Southern Bell compound.” He drove a block past the lot and turned around, but kept the compound in his sight at all times. He saw two persons in a Mustang convertible with the top down drive onto the street from the lot which had “no other means of exit.” The Mustang had two 12 foot ladders propped between the front windshield and rear seat. The officer knew that “ladders [were] stored on top of [trucks]” in the Southern Bell compound and “as soon as [he] saw the ladder sticking out of the [Mustang, he] had even more reasonable suspicion that ... they had probably broken into the Southern Bell [compound], [and] stolen ladders off the top of the truck.” He stopped the Mustang driven by appellee’s codefendant “for investigative purposes” and then noticed that the ladders were marked “Bell South or Southern Bell.” Officer Littlefield arrested appellee and the driver after he concluded that they had stolen the ladders.
Section 901.151(2), Florida Statutes (1989), in pertinent part, provides:
Whenever any law enforcement officer ... encounters any person under circumstances which reasonably indicate that such person has committed, [or] is committing ... a violation of the criminal laws ... he may temporarily detain such person for the purpose of ... ascertaining the circumstances surrounding his presence abroad which led the officers to believe that he had committed, [or] was committing ... a criminal offense.
As stated in Adams v. Williams, 407 U.S. 143, 145-146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 616-617 (1972):
The Fourth Amendment does not require an officer, who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow ... a criminal to escape. On the contrary, ... it may be the essence of good police work to adopt an immediate response_ A brief stop of a suspicious individual in order ... to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.
Also, an officer may briefly stop a moving vehicle to investigate a “founded suspicion” that its occupant is involved in criminal activity. See United States v. Hensley, 469 U.S. 221, 226, 105 S.Ct. 675, 679, 83 L.Ed.2d 604, 610 (1985).
Whether an officer has a “founded suspicion” which gives him or her the right to stop a citizen (or the vehicle the citizen occupies) is determined by the totality of the circumstances, that is, the whole picture must be taken into account. United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629 (1980). From the whole picture “a trained officer draws inferences and makes deductions— inferences and deductions that might elude an untrained person.” Id. at 418, 101 S.Ct. at 695, 66 L.Ed.2d at 629.
As noted in Terry v. Ohio, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879 20 L.Ed.2d 889, 905 (1968):
We deal here with a entire rubric of police conduct — necessarily swift action predicated upon on-the-spot observations *1251 of the officer on the beat — which historically has not been, and as a practical matter could not be, subjected to the warrant procedure.
An officer on patrol may only have a moment in which to become suspicious about otherwise innocent looking activity. As a result, the officer is not always certain about his or her suspicion. However, hard certainty is not required for a “founded suspicion.” In Cortez, the Supreme Court remarked:
The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behaviors; jurors as fact-finders are permitted to do the same— and so are law enforcement officers.... [T]he evidence thus gathered must be seen and weighed not in the terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.
Cortez, 449 U.S. at 418, 101 S.Ct. at 695, 66 L.Ed.2d at 629.
Sub judice, Officer Littlefield as a trained officer saw the ladders in the Mustang and believed that a crime had been committed. He stopped the Mustang to investigate his “founded suspicion” and to obtain more information. During the investigation, he saw “Bell South or Southern Bell” markings on the ladders. Those observations gave Officer Littlefield probable cause to arrest appellee and seize the ladders as evidence.
Thus, we hold that the trial court erred when it ruled that Officer Littlefield lacked “founded suspicion” to stop the Mustang.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
ANSTEAD and STONE, JJ., concur.