710 So.2d 584 (1998)
Lawrence MOSKOWITZ, Appellant,
v.
STATE of Florida, Appellee.
No. 96-2140.
District Court of Appeal of Florida, Fourth District.
February 11, 1998.
Rehearing and Rehearing Denied March 30, 1998.
*585 Ira N. Loewy of Bierman, Shohat, Loewy, Perry & Klein, P.A., Miami, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, Patricia Ann Ash and Ettie Feistmann, Assistant Attorney Generals, West Palm Beach, for appellee.
Rehearing and Rehearing En Banc Denied March 30, 1998.
STONE, Chief Judge.
Appellant entered a plea of nolo contendere to charges of burglary and grand theft, reserving the right to appeal the denial of his motion to suppress. The primary issue is whether giving Miranda warnings in the course of a consensual encounter constitutes such a show of authority as to effectively restrain a defendant's freedom, converting an otherwise consensual inquiry into a seizure, where, at the time the Miranda card was read, the officer did not yet have a sufficiently well-founded suspicion that the defendant was involved in criminal activity. Finding no abuse of discretion, we affirm.
The facts are not in issue. A uniformed officer was dispatched in response to a residential burglar alarm. He saw Moskowitz on the sidewalk only a few houses away from the house where the alarm was sounding, "coming directly from where I was responding to a burglar alarm," and that Moskowitz "appeared to be nervous, carrying a VCR case and the alarm immediately close to where he was." Moskowitz at first looked directly at the officer and then looked quickly away.
The officer pulled up in his marked police car without turning on his lights and approached Moskowitz without drawing his weapon. Moskowitz agreed to answer a few questions and the officer engaged him in general conversation in the course of which the officer read Moskowitz his Miranda rights. Other officers had arrived on the scene by that time.
The officer asked Moskowitz about the camcorder he was carrying, and Moskowitz told the officer it had been given to him as a birthday present about six months before by a friend, "John Smith," who lived in New York. However, Moskowitz could not tell the officer how to get into contact with the friend, nor was the date given consistent with Moskowitz's known birthday. The officer read the name David George from the tag on the outside of the camcorder case, which he may have had to flip over to read, and asked Moskowitz who George was. Moskowitz answered that he did not know George. When the officer had stopped Moskowitz, he had noticed a bulge in his pocket. The officer asked Moskowitz whether he was carrying any weapons, drugs, or narcotics. When Moskowitz replied that he was not, the officer asked if he could search him and Moskowitz consented. The search revealed that the pocket contained socks, jewelry, and cash. At that time, the officer decided that Moskowitz was a "risk to take flight," asked *586 him to sit in the back of the police car, and closed the door.
In the meantime, another officer located George's house. The rear of that house faced the place they were standing and was located a few houses away from the house at which the alarm had sounded. It had been burglarized. When the first officer was informed about the burglary at George's house, he placed Moskowitz under arrest. George identified the property found on Moskowitz, who was taken to the station and confessed.
The trial court found that Moskowitz was never told that he was not free to leave and that he had not been objectively detained or seized until the officer asked him to sit in the car. The court further found that the officer had a well-founded suspicion sufficient to justify a temporary detention, based on statements made to the officer in combination with the jewelry and cash found in his pockets and the fact that George lived in the immediate area. A trial court's ruling on a motion to suppress is accorded deference and is clothed with the presumption of correctness. Walker v. State, 707 So.2d 300, 313 (Fla. 1997); McNamara v. State, 357 So.2d 410, 412 (Fla.1978).
Moskowitz argues that he was seized when the officer read him his Miranda rights. A person is "seized" when a reasonable person would believe, under the totality of the circumstances, that he or she was not free to terminate the encounter or to decline the officer's request. E.g. Florida v. Bostick, 501 U.S. 429, 439, 111 S.Ct. 2382, 2388-89,115 L.Ed.2d 389 (1991). It is objective circumstances, and not subjective intent, that controls. See Michigan v. Chesternut, 486 U.S. 567, 108 S.Ct. 1975,100 L.Ed.2d 565 (1988); United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).
Here, there was nothing said prior to his being asked to sit in the car that would indicate to Moskowitz that he was not free to terminate the encounter. But for reading the rights card, there was no police conduct that was either coercive or oppressive. We cannot conclude that reading Miranda warnings in the course of consensual questioning requires suppression, per se; nor is such a result mandated on this record. Cf. INS v. Delgado, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984); United States v. Mendenhall.
In U.S. v. Poitier, 818 F.2d 679, 683 (8th Cir.1987), agents approached two travelers in an Arkansas airport and began to question them. After receiving inconsistent responses, they informed Ms. Poitier that they suspected her of carrying drugs and read her the Miranda warnings. The circuit court found:
Although the encounter ... began as a consensual one, we conclude that when the agents stated that they suspected Poitier of carrying drugs and read her Miranda rights, at that point a reasonable person would not have felt free to leave. The accusation, coupled with the Miranda warnings, created a sufficient show of authority to effectively restrain Poitier's freedom of movement. Mendenhall, 446 U.S. at 553-54, 100 S.Ct. at 1876-77.
Id., 818 F.2d at 683. The court went on to determine that notwithstanding this, there was a sufficient basis for a Terry stop based on inconsistent answers. However, in this case, there is no evidence that the officers told Moskowitz that they suspected him of a crime before reading him his rights. It is clear that in Poitier, the detention was not found on the basis of the Miranda warning alone, but also on the officer's informing Poitier that he suspected her of carrying drugs from Florida.
Moskowitz was effectively seized when he was subsequently placed in the police car. However, the trial court could conclude there were sufficient facts available to the police at that time to support a well-founded suspicion to detain him for further investigation. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); see also State v. Woodard, 582 So.2d 1249 (Fla. 4th DCA 1991).
We also affirm as to all other issues asserted. Therefore, the judgment and sentence are affirmed.
GROSS, J., and DAKAN, STEPHEN L., Associate Judge, concur.