795 So.2d 1071 (2001)
Freddie RAYSOR, Appellant,
v.
STATE of Florida, Appellee.
No. 4D00-3100.
District Court of Appeal of Florida, Fourth District.
September 19, 2001.
Carey Haughwout, Public Defender, and James W. McIntire, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Meredith L. Balo, Assistant Attorney General, Fort Lauderdale, for appellee.

EN BANC
KLEIN, J.
Appellant pled guilty to possession of cocaine and drug paraphernalia after the trial court denied his motion to suppress. We reverse, concluding that when the officer read appellant his Miranda rights during a consensual encounter, the encounter was no longer consensual.
According to the officer, he observed appellant riding his bicycle in a high crime area and waved at him in a friendly manner without beckoning him to come over. Appellant waved back and approached the officer, who observed callouses on appellant's fingers, causing him to suspect that appellant used crack cocaine. At that point the officer read appellant his Miranda rights, which were waived, and asked appellant if he had cocaine or drug paraphernalia. Appellant responded in the affirmative and revealed a crack pipe.
Appellant moved to suppress, arguing that when the officer read him his Miranda rights a reasonable person would not have felt free to leave, and that he was unlawfully seized at that point. The officer testified at the hearing on the motion to suppress that appellant was at all times free to leave, but that he always reads people their Miranda rights out of an abundance of caution. The trial court concluded that, even after appellant was read his Miranda rights, this was no more than a consensual encounter and appellant had therefore consented to the search.
In United States v. Poitier, 818 F.2d 679, 683 (8th Cir.1987), agents approached two travelers in an Arkansas airport and began to question them. After receiving inconsistent responses, they informed one of them that they suspected her of carrying drugs and read her Miranda rights. Affirming suppression of the contraband produced by the ensuing search, the court explained:
Although the encounter ... began as a consensual one, we conclude that when the agents stated that they suspected Poitier of carrying drugs and read her *1072 Miranda rights, at that point a reasonable person would not have felt free to leave. The accusation, coupled with the Miranda warnings, created a sufficient show of authority to effectively restrain Poitier's freedom of movement. Mendenhall, 446 U.S. at 553-54, 100 S.Ct. at 1876-77.
The state cites Moskowitz v. State, 710 So.2d 584 (Fla. 4th DCA 1998), arguing that it stands for the proposition that a reasonable person could still feel free to leave after his Miranda rights were read to him during a consensual encounter. Although Moskowitz could be so interpreted, the case is distinguishable because the facts were sufficient to give the officer a well-founded suspicion to detain Moskowitz when he gave the Miranda warnings. In the present case it is undisputed that the officer did not have reasonable suspicion.
Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), requires that suspects be warned of their constitutional rights before in-custody police questioning. In this case, the officer testified that he advised appellant:
[of his] right to remain silent; anything he said could and would be used against him; right to an attorney prior to questioning; if he could not afford one, he would be appointed one by the court.
The present case is distinguishable from the cases cited in the dissent because in the present case the officer gave appellant warnings which are legally required only when a person is in custody and not free to leave. Because Miranda rights are not required to be read to suspects unless they are undergoing custodial interrogation, it follows that a person who has been read his Miranda rights would reasonably assume that he is not free to leave. See Dickerson v. United States, 530 U.S. 428, 443, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000)("Miranda has become embedded in routine police practice to the point where the warnings have become part of our national culture").
The dissent relies on California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), which involved an officer chasing a fleeing suspect, and United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497, in which officers asked defendant to go with them to the airport drug enforcement office. Those cases involve activities other than an explicit warning which is legally required to be given when a person is in custody. The Mendenhall Court recognized that a seizure could occur where "the use of language or tone of voice indicating that compliance with the officer's request might be compelled." 446 U.S. at 554, 100 S.Ct. at 1877. In the present case, the officer's language, i.e., the giving of the Miranda warnings, gave the unmistakable message that the appellant was in custody. The only way appellant could have felt free to leave would have been for him to have assumed that the officer was wrong in advising him that he was entitled to court appointed counsel if he could not afford counsel right there and then.
We therefore reverse the order denying the motion to suppress and recede from any language in Moskowitz which could be interpreted contrary to our holding in this case.
POLEN, C.J., DELL, GUNTHER, WARNER, FARMER, STEVENSON, GROSS, TAYLOR and HAZOURI, JJ., concur.
STONE, J., dissents with opinion, in which SHAHOOD, J., concurs.
STONE, J., dissenting, in which SHAHOOD, J., concurs.
In my judgment, an otherwise lawful encounter is not converted, as a matter of law, to a seizure simply by an officer's *1073 mistakenly advising a defendant of Miranda rights. Even in Poitier, the court was careful to clearly couple the premature warnings with the contemporaneous statement by the officers that they suspected Poitier of carrying drugs. In this case, nothing that transpired prior to the officer's giving the warnings is called into question, or linked to the seizure, by the defense.
As the majority recognizes, the determinative question in concluding whether there has been a seizure is whether a reasonable person would believe that he or she was not free to leave. United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). I cannot agree, however, that giving Miranda warnings, at least taken alone, rises to a sufficient level of compulsion or restraint to support imposition of the exclusionary rule.
In California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), the Supreme Court concluded that a seizure does not occur simply by virtue of an officer's chasing a fleeing suspect. I would conclude that simply advising a defendant of rights, regardless of the fact that such is not mandated by law under the circumstances, with the apparent intention of giving a defendant the benefit of that information, is not as significant an event as the non-restraining chase permitted under Hodari D. Similarly, it is not as intimidating an event as that authorized in Mendenhall, where the officers take (and return) the defendant's identification and ticket, note the differing names on each, and ask the defendant to go with them to the airport drug enforcement office. The history of judicially approved "encounters" is replete with similar examples of questioned police conduct which might have, but have not, been found to rise to the level of unlawful restraint as a matter of law. I note that there is no suggestion in this case that the officer's demeanor, tone of voice, or choice of accompanying language indicated that Raysor's freedom of movement was restrained. It is solely the giving of the warnings that is deemed coercive.
I concur in that portion of the majority opinion recognizing that its' holding is not applicable where there is, in any event, reasonable suspicion that would justify a Terry stop. I cannot help noting that this case is not a close call in that respect, as there was no apparent reasonable justification for this officer's conduct in waving to Raysor (there is no indication that they were even acquainted) and singling him out to ask about contraband on his person based simply on his calloused hands. My concern, however, is for the closer cases in which officers may not be certain whether the facts will pass muster as supplying founded suspicion for an authorized stop.