959 So.2d 353 (2007)
Reinaldo HIDALGO, Appellant,
v.
The STATE of Florida, Appellee.
Nos. 3D06-1338, 3D06-2082.
District Court of Appeal of Florida, Third District.
June 6, 2007.
Bennett H. Brummer, Public Defender, and Gwendolyn Powell Braswell, Assistant Public Defender, for appellant.
Bill McCollum, Attorney General, and William J. Selinger, Assistant Attorney General, for appellee.
Before FLETCHER, WELLS, and SUAREZ, JJ.
WELLS, J.
In this consolidated appeal, Reinaldo Hidalgo challenges his convictions and sentences for burglary, theft, and Florida Pawnbrokering Act offenses charged in four separate cases, to which Hidalgo pled guilty while reserving the right to appeal denial of a motion to suppress. Hidalgo's motion sought to suppress:
Defendant's statements to police admitting to various locations and taking items from within, including without limitation a Seiko watch, a Tag Heuer watch, pawn slips, two computers, and all other evidence obtained by virtue of Defendant's admission.
*354 Because we agree that this motion should have been granted, we reverse and remand for vacation of the convictions and sentences.
Hidalgo was initially stopped by two plain clothes detectives while he was walking down a busy residential street with an individual identified as Gabriel. One of the detectives (who was patrolling the area because of a recent rash of burglaries) recognized Gabriel, a known burglar who had been arrested a number of times. Although this detective knew that Gabriel did not live in the area, neither detective knew anything about Hidalgo.
Gabriel and Hidalgo were called over and voluntarily went to talk to the detectives. Gabriel and Hidalgo were asked for identification and, over safety concerns, "patted-down." After the pat-down was completed, Hidalgo pulled a yellow sheet of paper from one of his pockets as he searched for his identification. One of the detectives recognized it as a pawn shop receipt. The officer examined the receipt, questioned Hidalgo about the two watches listed on the receipt (which Hidalgo claimed were his), and returned the slip to Hidalgo. Gabriel and Hidalgo were permitted to leave.
In the following week to ten days, one of the detectives searched a pawn shop activity database. The detectives also reviewed stolen property reports and found reports of stolen watches matching the descriptions of those listed on Hidalgo's pawn shop receipt. The watch owners were taken to the pawn shop named on the receipt that Hidalgo had in his pocket and identified the watches pawned by Hidalgo as belonging to them. Hidalgo was arrested and confronted with the evidence that the detectives had gathered.
Hidalgo waived his Miranda rights and admitted to: (1) stealing a Tag Heuer watch and a laptop computer from a Collins Avenue address; (2) taking a Seiko watch from a Bay Drive address; (3) entering a different Collins Avenue address and stealing two laptop computers; and, (4) re-entering the same Bay Drive address from which he had taken the Seiko watch to steal a camera and other items. Hidalgo was charged in four different cases with each of these entries, moved to suppress his statements and the evidence of these crimes, and pled guilty, reserving the right to appeal denial of his suppression motion.
The State acknowledges that Hidalgo's consensual encounter with the detectives became a detention when the detectives conducted the pat-down search and that because no reasonable suspicion existed at that time, his detention was unlawful. See Popple v. State, 626 So.2d 185, 186 (Fla.1993) (during an investigatory stop "a police officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime"); Enich v. State, 838 So.2d 1216, 1217 n. 1 (Fla. 3d DCA 2003) (confirming that a consensual search was transformed into a stop when a pat down search was conducted); Hines v. State, 737 So.2d 1182, 1186 (Fla. 1st DCA 1999) (stating that a "pat-down or frisk transforms a consensual police-citizen encounter into a `stop'"); Sholtz v. State, 649 So.2d 283, 284 (Fla. 2d DCA 1995) (confirming that an encounter was transformed into a stop when an officer conducted a pat-down search). However, the State maintains that Hidalgo's confession and the evidence of his crimes should not be suppressed because discovery of this evidence was attenuated from the original stop. We cannot agree.
In Moody v. State, 842 So.2d 754, 759-60 (Fla.2003), the Florida Supreme Court confirmed that although a stop may be *355 illegal, all evidence obtained following the stop is not per se inadmissible. Where an independent source for discovery of the evidence exists, where the evidence inevitably would have been discovered, or where there is attenuation between the challenged evidence and the illegal conduct, evidence seized following an illegal stop may still be admitted:
Although the stop was illegal, the fruit of the poisonous tree doctrine does not automatically render any and all evidence inadmissible. A court may admit such evidence if the State can show that (1) an independent source existed for the discovery of the evidence, Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920); or (2) the evidence would have inevitably been discovered in the course of a legitimate investigation, Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); or (3) sufficient attenuation existed between the challenged evidence and the illegal conduct, Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
Moody, 842 So.2d at 759.
The State in this case does not claim that an independent source existed for discovery of the evidence that Hidalgo seeks to suppress. Nor does it claim that this evidence inevitably would have been discovered in the course of a legitimate investigation. It claims only that the evidence Hidalgo seeks to suppress was sufficiently attenuated from the illegal stop to permit its admission. The record does not support this argument.
"In order to determine if evidence is sufficiently attenuated, the court must consider three factors: (1) the temporal proximity of the arrest and the discovery of the evidence sought to be suppressed; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the police misconduct." Id. at 760. Although the detective who patted-down Hidalgo did not seize the pawn shop receipt from Hidalgo, the information he gleaned from it was used to track down the stolen watches, to locate them at the pawn shop, to have their owners identify them, to arrest Hidalgo for their theft and to secure a confession regarding not just this property but other stolen property as well. While these activities took a number of days to accomplish, they were proximate to both the stop and the arrest and certainly not interrupted by any intervening events. As for the purpose and flagrancy of the police misconduct, they are admitted by the State. Under the circumstances, Hidalgo's confession and all evidence discovered following the stop and frisk should have been suppressed.
Accordingly, we reverse Hidalgo's convictions and sentences and remand with instructions that an order be entered granting his motion to suppress and for further proceedings consistent with this opinion.