985 So.2d 602 (2008)
Eric Christopher CALDWELL, Appellant,
v.
STATE of Florida, Appellee.
No. 2D07-565.
District Court of Appeal of Florida, Second District.
June 6, 2008.
Rehearing Denied July 17, 2008.
Frank W. McDermott and J. Andrew Crawford of McDermott Law Firm, P.A., St. Pete Beach, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Diana K. Bock, Assistant Attorney General, Tampa, for Appellee.
BAILEY, JENNIFER D., Associate Judge.
Eric Christopher Caldwell appeals his judgments and sentences for three burglaries of a conveyance as well as a sentence imposed on violation of probation, which were entered on a plea following the denial of his dispositive motion to suppress. He sought to suppress confessions that he made to law enforcement officers during the investigation of the burglary. Conflicting with the Fourth District's decision in Raysor v. State, 795 So.2d 1071 (Fla. 4th DCA 2001), we hold that the officer who contacted Mr. Caldwell did not transform a consensual encounter into an illegal seizure of Mr. Caldwell's person when he gave him a Miranda[1] warning. Likewise, he did not transform the encounter into an illegal seizure when he frisked Mr. Caldwell prior to transporting him in a police car under the facts of this case. Because *603 Mr. Caldwell was not illegally detained when he confessed to the burglaries, there is no basis to suppress his confessions. Accordingly, we affirm the judgments and sentences on appeal.
On May 27, 2006, a security camera videotaped a burglar breaking into autos parked at the Vinoy Towers. The police were called, and St. Petersburg Police Officer T. Crisco watched the grainy, poor-quality security film of the burglaries. Although the individual features of the perpetrator were not visible, the officer was able to determine that the film showed a white male of slight build, wearing dark pants, a dark shirt, and a dark baseball cap worn backwards.
The next day, Officer Crisco observed Caldwell in a nearby park with a group of other people. Officer Crisco's attention was drawn by the fact that Caldwell was wearing a dark t-shirt, dark pants, and a dark baseball cap, worn backwards, and that Caldwell's build was similar to the person Officer Crisco had seen in the video. Officer Crisco drove his patrol car onto the park lawn and stopped near the crowd. He did not use his sirens or lights, and driving across the grass was routine at the park for patrol officers because of the lack of paved access. He approached Mr. Caldwell. Officer Crisco told Mr. Caldwell he would like to speak with him and directed him back towards the police cruiser. Mr. Caldwell agreed to come over to the cruiser and talk. In the ensuing conversation, Officer Crisco told Mr. Caldwell that he had seen the videotape of the break-ins at the Vinoy Towers and that Officer Crisco knew Mr. Caldwell did it. Mr. Caldwell denied involvement and denied he was the person on the videotape.
Officer Crisco read Mr. Caldwell his Miranda rights. Mr. Caldwell then asked if he was under arrest. Officer Crisco advised Mr. Caldwell that he was not under arrest but that Officer Crisco needed to ask him some questions and wanted to make sure that Mr. Caldwell was aware of his rights. At the suppression hearing, Officer Crisco testified that he administered the Miranda warnings in full knowledge that he did not have reasonable suspicion, but because if Mr. Caldwell did volunteer a confession, Officer Crisco wanted to be able to use it in court. Officer Crisco also testified that Mr. Caldwell was free to leave at all times. So, as Officer Crisco continued to talk with Mr. Caldwell, Mr. Caldwell knew that anything he said to the officer could be used against him; and also knew that he was not under arrest. The conversation continued.
Mr. Caldwell asked Officer Crisco if he could see the tape. Officer Crisco told Mr. Caldwell that he would have to go to the Vinoy Towers to see the tape and offered Mr. Caldwell a ride. Mr. Caldwell accepted the offer of a ride in the squad car. At no time was Mr. Caldwell ordered or directed into the patrol car. Officer Crisco told Mr. Caldwell that if he was going to ride in the patrol car, Officer Crisco would have to frisk him. Mr. Caldwell did not object and was frisked. Nothing was found, Mr. Caldwell got into the car, and Officer Crisco drove Mr. Caldwell, who was not cuffed or otherwise constrained, to the Vinoy Towers. Mr. Caldwell never broke off the conversation nor did he ask to leave or to get out of the patrol car.
On the way to the Vinoy Towers, Officer Crisco repeated his conviction that it was Mr. Caldwell on the tape. Upon arriving at the Vinoy Towers, before seeing the tape, Mr. Caldwell confessed to Officer Crisco. He subsequently confessed to another police officer verbally and to a detective in writing.
Mr. Caldwell moved to suppress the confessions and his motion was denied. Mr. Caldwell's primary point on appeal is that *604 Officer Crisco's Miranda warning transformed a consensual encounter into an investigatory stop, and that because Officer Crisco did not have a reasonable suspicion that Mr. Caldwell had committed any crime, the stop was illegal and his confession should have been suppressed. See Popple v. State, 626 So.2d 185, 186 (Fla. 1993) ("In order not to violate a citizen's fourth amendment rights, an investigatory stop requires a well-founded, articulable suspicion of criminal activity. Mere suspicion is not enough to support a stop.") Thus, if the exchange between Officer Crisco and Mr. Caldwell was an investigatory stop and not a consensual encounter, Mr. Caldwell's subsequent confession would have to be suppressed, as Officer Crisco acknowledged that he did not have a reasonable suspicion of guilt when he approached Mr. Caldwell.
Mr. Caldwell relies on Raysor v. State, 795 So.2d 1071 (Fla. 4th DCA 2001), to support his argument that the issuance of the Miranda warning transformed an otherwise consensual encounter into an investigatory stop. In Raysor, an officer engaged in a consensual encounter with Raysor noticed calluses on Raysor's fingers, causing the officer to suspect that Raysor used crack cocaine. The officer then read Raysor his rights and asked him if he had any cocaine or drug paraphernalia. Raysor, 795 So.2d at 1071. The Fourth District held that the reading of the Miranda warning converted the encounter from consensual to custodial:
Because Miranda rights are not required to be read to suspects unless they are undergoing custodial interrogation, it follows that a person who has been read his Miranda rights would reasonably assume that he is not free to leave. See Dickerson v. United States, 530 U.S. 428, 443, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) ("Miranda has become embedded in routine police practice to the point where the warnings have become part of our national culture").
Id. The court concluded, "In the present case, the officer's language, i.e., the giving of the Miranda warnings, gave the unmistakable message that appellant was in custody." Id. at 1072.
To the extent that Raysor is not distinguishable on its facts, we respectfully disagree with the conclusion reached by our sister court. We hold instead that the mere administration of the Miranda warning to a potential suspect with whom the officer is engaged in a consensual encounter does not, by itself, transform that encounter into an investigatory stop. See Luna-Martinez v. State, 984 So.2d 592 (Fla. 2d DCA 2008) ("We reject any suggestion that the giving of the warnings to the defendant here in itself indicated that he had been taken into custody."). The same conclusion was reached by the Fourth Federal Circuit in Davis v. Allsbrooks, 778 F.2d 168, 173 (4th Cir.1985), and the Sixth Federal Circuit in United States v. Lewis, 556 F.2d 446, 449 (6th Cir.1977):
Finally, we address the question of whether the reading of Miranda warnings to a suspect should by itself create custody. We think it inadvisable to impose so absolute a rule. To hold that the giving of Miranda warnings automatically disables police from further questioning upon a suspect's slightest indication to discontinue a dialogue would operate as a substantial disincentive to police to inform suspects of their constitutional protections. It would convert admirable precautionary measures on the part of officers into an investigatory obstruction.
Davis, 778 F.2d at 173 (internal citation omitted).

*605 [W]e reject appellant's suggestion that the very giving of Miranda rights helped produce a custodial interrogation. The precaution of giving Miranda rights in what is thought could be a non-custodial interview should not be deterred by interpreting the giving of such rights as a restraint on the suspect, converting a non-custodial interview into a custodial interrogation for Miranda purposes.
Lewis, 556 F.2d at 449; see also Commonwealth v. Hoak, 700 A.2d 1263, 1267 (Pa.Super.Ct.1997) ("Absent some coercive conduct by police, a request for cooperation or consent to search does not automatically convert an undeniably permissible encounter into an illegal seizure any more than the giving of Miranda warnings transforms a non-custodial setting into a custodial one.").
The proper test of whether an encounter has crossed the line from consensual to custodial is whether, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).
Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.
Id. "[T]he crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would `have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" Florida v. Bostick, 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (quoting Michigan v. Chesternut, 486 U.S. 567, 569, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988)). "This `reasonable person' standard... ensures the scope of the Fourth Amendment protection does not vary with the state of mind of the particular individual being approached." Chesternut, 486 U.S. at 574, 108 S.Ct. 1975. We conclude that the totality of the circumstances/reasonable person test enunciated in Mendenhall and Bostick cannot be said to be met solely on the basis of a Miranda warning. Furthermore, in this case, none of the "examples of circumstances that might indicate a seizure" described in Mendenhall are present.
The purpose of the Miranda warning is to prevent an unaware citizen from surrendering his or her constitutional rights out of ignorance of those rights. See Minnesota v. Murphy, 465 U.S. 420, 456, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984). Advising a citizen of his rights prior to the acquisition of reasonable suspicion can only further the goals of Miranda in this regard. If anything, the warning is more likely to place a citizen on his guard against making incriminatory statements as opposed to creating a false sense of security. We also observe that when the reading of the Miranda warning is followed by a clarifying statement to the effect that the person being questioned is not under arrest, as happened in this case, a reasonable person would be on notice that he is free to disengage from the encounter should he wish to do so. Although this fact may appear to distinguish this case from Raysor, it is merely a factor in our analysis of the totality of the circumstances and is not, in and of itself, determinative of our holding in this case.
Mr. Caldwell next asserts that the fact that he was frisked prior to riding in the patrol car implied that he was not free to leave and therefore the frisk transformed *606 the encounter to an investigatory stop. Florida courts have consistently held that pat down searches performed for safety purposes only are impermissible unless the officer has a reasonable suspicion that the individual is armed. See D.L.J. v. State, 932 So.2d 1133, 1134 (Fla. 2d DCA 2006). In addition, Florida courts have held that a consensual encounter is transformed into a detention if a pat down search is conducted. See Hidalgo v. State, 959 So.2d 353, 354 (Fla. 3d DCA 2007). Such a search without reasonable suspicion would render the detention unlawful. Id.
The First District addressed a nearly identical situation in Williams v. State, 403 So.2d 453 (Fla. 1st DCA 1981). In that case, "[Williams] and his vehicle resembled closely, but not exactly, the description given by the victim of the crime. The circumstances were sufficient to warrant further investigation but not to support the arrest of appellant at that time." Williams, 403 So.2d at 456. Williams voluntarily agreed to accompany the detective to the police station in the patrol car. Prior to getting into the back seat, Williams was frisked. The First District concluded that "[t]he officer was not required to gamble with his life by placing appellant in the patrol car with him without the precaution of a pat down for weapons." Id. The First District also added that "[t]ransportation ... by use of a police car does not per se add to the coercive aspects of questioning." Williams, 403 So.2d at 456.
We agree with the First District and hold that an officer need not have any reasonable suspicion to frisk a person who is about to voluntarily become a passenger in that officer's vehicle. To hold otherwise would be to declare that a law enforcement officer is not entitled to protect himself or herself from potential danger while driving with passengers in his or her own police vehicle.
Based on the totality of the circumstances presented in this case, we conclude that Officer Crisco's conduct did not constitute a show of authority that would have caused a reasonable person to believe that he was not free to terminate the encounter. We therefore affirm the trial court's denial of Mr. Caldwell's suppression motion, affirm his conviction, and certify conflict with Raysor.
Affirmed.
ALTENBERND and STRINGER, JJ., Concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).