82 So.3d 1136 (2012)
A.W., a child, Appellant,
v.
STATE of Florida, Appellee.
No. 4D10-4923.
District Court of Appeal of Florida, Fourth District.
March 7, 2012.
*1137 Carey Haughwout, Public Defender, and Travis Dunnington, Assistant Public Defender, West Palm Beach, for appellant.
Pamela Jo Bondi, Attorney General, Tallahassee, and Daniel P. Hyndman, Assistant Attorney General, West Palm Beach, for appellee.
STEVENSON, J.
A.W. appeals the disposition order finding him guilty of battery on a law enforcement officer, resisting an officer without violence and criminal mischief. Because the evidence failed to establish that the arresting officers were acting in the lawful execution of a legal duty, we reverse the finding of guilt as to resisting an officer without violence.
During appellant's trial, an officer testified that she responded to an anonymous 911 call reporting a peeping tom/prowler. When she arrived at the community from which the call originated, she was "flagged" down by people sitting in a car. The people indicated that they had made the 911 call. They explained to the officer that, after someone looked into their window, they looked outside and saw two males. The officer followed the 911 callers as they drove to the front of the community where they stopped and pointed out the defendant as one of the males. The officer did not obtain the 911 callers' names or addresses, did not obtain a copy of the 911 call and was not sure whether they lived in the home where the peeping occurred. Wishing to remain anonymous, the 911 callers left the area after identifying the defendant and could not later be located by law enforcement.
Upon the identification, the officer exited her vehicle and approached appellant, along with a second officer who had arrived on the scene. She asked appellant for his name and address, but he refused to answer. The officer explained that she was conducting an investigation and again asked appellant to provide identifying information. Appellant began to make a call on his cell phone and the officer asked him to stop. Appellant ignored this request. The second officer who was also present reached for appellant's arm, which prompted appellant to begin "flailing" and yelling. Appellant was handcuffed and placed in the back of a patrol car. At trial, appellant made a motion for judgment of dismissal as to the resisting without violence charge, arguing that the officers were not *1138 in the lawful execution of a legal duty because they lacked reasonable suspicion to detain him. The motion was denied.
A trial court's denial of a motion for judgment of dismissal is reviewed de novo. See M.M. v. State, 72 So.3d 328, 330 (Fla. 4th DCA 2011). "If the evidence, taken in a light most favorable to the state does not support a conviction, the motion must be granted." T.L.T. v. State, 53 So.3d 1100, 1102 (Fla. 4th DCA 2011). A conviction for resisting an officer without violence requires proof that "(1) the officer was engaged in the lawful execution of a legal duty; and, (2) the actions of the defendant obstructed, resisted or opposed the officer in the performance of that legal duty." O.B. v. State, 36 So.3d 784, 786 (Fla. 3d DCA 2010) (quoting V.L. v. State, 790 So.2d 1140, 1142 (Fla. 5th DCA 2001)).
Though the encounter between appellant and the officers began as consensual, it became an investigatory detention when the second officer grabbed appellant. See Florida v. Bostick, 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (the relevant inquiry, considering the circumstances of the encounter, is whether "the police conduct would `have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business'") (quoting Michigan v. Chesternut, 486 U.S. 567, 569, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988)); Caldwell v. State, 985 So.2d 602, 605 (Fla. 2d DCA 2008) (noting that physical touching by officers is a factor indicating that a seizure has occurred), aff'd, 41 So.3d 188 (Fla.2010). However, the officers lacked reasonable suspicion to detain appellant. "In [resisting without violence] cases involving an investigatory detention, it is necessary for the State to prove that the officer had a reasonable suspicion of criminal activity...." Davis v. State, 973 So.2d 1277, 1279 (Fla. 2d DCA 2008). Reasonable suspicion may be based on an anonymous tip, so long as it is corroborated. M.M., 72 So.3d at 330-31. Neither officer testified to observing anything that corroborated the tip from the 911 callers.
Generally, tips provided through face-to-face encounters from anonymous persons, referred to as "citizen informants," are considered more reliable than anonymous tips offered by telephone. See McKelvin v. State, 53 So.3d 401, 405 (Fla. 4th DCA 2011). Citizen informants are generally more reliable because:
First, a citizen informant may be motivated not by pecuniary gain, but by the desire to further justice. See [State v. Maynard, 783 So.2d 226, 230 (Fla. 2001)]. Second, unlike an anonymous tipster, a witness who directly approaches a police officer may be held accountable for false statements. See United States v. Christmas, 222 F.3d 141, 144 (4th Cir.2000) (citing [Illinois v. Wardlow, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)]). Third, a face-to-face tip may be viewed as more reliable because the officers who receive the tip have the opportunity to observe the demeanor and evaluate the credibility of the person offering the information. See United States v. Heard, 367 F.3d 1275, 1279 (11th Cir.2004). Fourth, a witness who approaches the police in person may subject himself or herself to potential reprisal from the defendant, thereby rendering the tip more reliable than an anonymous tip. See Christmas, 222 F.3d at 144.
Baptiste v. State, 995 So.2d 285, 291 (Fla. 2008). In contrast to the typical citizen informant, here, the 911 callers could not be held responsible for providing false information, nor did they have reason to fear reprisal because their identity could not be determined. Rather, the 911 callers are more like the truly anonymous telephone *1139 informant, making their information unreliable. See, e.g., McKelvin, 53 So.3d at 403-05 (anonymous, face-to-face tip unreliable where informant left no name, number or address, there was no evidence that similar crimes had occurred in the area, nor was there any testimony regarding the length of the encounter with the informant so as to determine whether the officer assessed credibility); State v. Rewis, 722 So.2d 863, 864-65 (Fla. 5th DCA 1998) (anonymous, face-to-face tip regarding possible drunk driver unreliable where informant flagged down officers at rest stop, provided no identifying information, officers could not identify truck informant drove and informant's motives were unknown). As such, the tip from the 911 callers did not provide the officers with reasonable suspicion to detain the defendant and the officers were not acting in the lawful execution of a legal duty. Davis, 973 So.2d at 1279. Thus, the finding of guilt as to resisting an officer without violence is reversed.
Lastly, we reject appellant's unpreserved challenge to the adjudication of guilt for battery on a law enforcement officer. Though the police were not engaged in the lawful execution of a legal duty, there was no indication that the officers were not acting in good faith.
A person is not justified in the use of force to resist an arrest by a law enforcement officer, or to resist a law enforcement officer who is engaged in the execution of a legal duty, if the law enforcement officer was acting in good faith and he or she is known, or reasonably appears, to be a law enforcement officer.
§ 776.051(1), Fla. Stat. (2009). Compare Gonzalez v. State, 38 So.3d 226, 229 (Fla. 2d DCA 2010) (explaining that, in exclusionary rule context, an officer has acted in "good faith" where an officer "`has acted in an objectively reasonable manner, in objective good faith, and as a reasonably well-trained officer would act'") (quoting Pilieci v. State, 991 So.2d 883, 896 (Fla. 2d DCA 2008)). Although we have found after legal arguments and briefings that the officers lacked reasonable suspicion to detain appellant, we cannot say on this record that the officers' "in the field" determination was unreasonable or motivated by improper purposes.
Reversed in part and affirmed in part.
MAY, C.J., and GROSS, J., concur.