CIKLIN, J.
By petition for delinquency, the state alleged that T.B. committed the offense of loitering and prowling, and, by doing so, violated probation[1] by committing the new *148 offense. After an adjudicatory hearing on the loitering and prowling charge, the court found T.B. committed the offense and placed him on a new period of probation. T.B. then admitted the violation of probation, preserving the issue of sufficiency of the evidence of loitering and prowling, and his probation was reinstated. He appeals the finding of guilt in the loitering and prowling case, arguing the evidence was insufficient and that the court erred in denying his motion for judgment of dismissal. He also contends we should reverse the court’s finding that he violated his probation, as the finding was based on the loitering and prowling. We agree the trial court should have granted the motion for judgment of dismissal as to the loitering and prowling. We also find that the evidence of loitering and prowling was insufficient to support a finding of guilt in the violation of probation case. Accordingly, we reverse the finding of guilt in both cases and remand for the court to vacate the disposition orders.
The evidence presented during the adjudicatory hearing revealed the following. Late one summer night, a police officer received a report of a possible burglary of a vehicle at an apartment complex. After entering the complex through the manned guard gate, he patrolled the area and observed T.B. and another male walking between two buildings. The boys exhibited a “[sjort of prowling demeanor, kind of creeping slowly through between the buildings, kind of looking around.” The officer directed the boys to “stop for police,” and T.B. made eye contact with the officer and stopped. However, the boys then started to walk backward toward an area that was not illuminated. The officer renewed his order that the boys stop and they did. In response to the officer’s questions, T.B. identified himself and claimed he was returning from a party and scaled a wall to gain entry to the complex in order to take a shortcut home. The officer frisked T.B. and discovered a scarf and pliers in his pants pocket.
At the close of the state’s case, defense counsel moved for a judgment of dismissal, arguing that T.B.’s behavior was not sufficient to establish both elements of loitering and prowling. The court denied the motion, finding it was “sufficient that there’s suspicion there that the officer can be concerned about — of a crime to be committed.”
We review the denial of a motion for judgment of dismissal de novo. AW. v. State, 82 So.3d 1136, 1138 (Fla. 4th DCA 2012) (citation omitted). Florida Rule of Juvenile Procedure 8.110(k) governs motions for judgment of dismissal. “A motion for judgment of dismissal tests the legal sufficiency of the state’s evidence.” A.L.J. v. State, 12 So.3d 873, 874 (Fla. 4th DCA 2009) (citation omitted). “If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction.” R.E. v. State, 13 So.3d 97, 98 (Fla. 4th DCA 2009) (citation and quotation marks omitted).
This court has elaborated on the elements of loitering and prowling:
The crime of loitering and prowling requires proof of two elements, both of which must be committed in the officer’s presence prior to arrest. First, the State must show the arresting officer observed the defendant loitering and prowling in a manner not usual for law-abiding citizens....
The second element requires the arresting officer to articulate specific facts which, when taken together with rational inferences from those facts, reasonably warrant a finding that a breach of *149 the peace is imminent or the public safety is threatened. Circumstances to be considered in determining whether a breach of the peace is imminent or public safety is threatened are whether the person takes flight, refuses to identify himself, or attempts to conceal himself or an object.
G.G. v. State, 908 So.2d 1031, 1033 (Fla. 4th DCA 2005) (citations and internal quotation marks omitted). “Because of its potential for abuse, the loitering statute must be applied with special care.” P.R. v. State, 97 So.3d 980, 982 (Fla. 4th DCA 2012) (citation omitted). With respect to the two elements of the offense, this court has explained,
[T]he state must prove that “the defendant engaged in incipient criminal behavior which law-abiding people do not usually engage in due to the time, place, or manner of the conduct involved.” Such behavior comes close to, but falls short of, the actual commission or attempted commission of a substantive crime. A “vaguely suspicious presence” is insufficient. Rather, the defendant’s behavior must point “toward an imminent breach of the peace or threat to public safety.” Stated another way, there must be a “threat of immediate, future criminal activity.”
To satisfy the second element, the state must demonstrate that the loitering occurred under “circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.”
Id. at 983 (emphasis in original) (citations omitted). Further,
Among the circumstances which may be considered in determining whether such alai’m or immediate concern is warranted is the fact that the person takes flight upon appearance of a law enforcement officer, refuses to identify himself ... or manifestly endeavors to conceal himself ... or any object.
If after being confronted by an officer, the defendant produces credible and reliable identification and complies with the orders of the law enforcement officer necessary to remove the threat to the public safety ... the charge under this statute can no longer properly be made. However, [t]he failure to provide identification or a reasonable explanation for the questioned activity are not elements of the crime....
[Bjecause flight from police comes after the officers’ presence is made known, flight alone is insufficient to satisfy the elements of loitering and prowling.
Id. (emphasis in original) (citations and internal quotation marks omitted). The court may not consider suspicious tools found on a suspect after the person is detained, as “[p]ossession of suspicious tools may support a suspicion of imminent criminal activity after the fact, but the offense of loitering and prowling must be completed prior to any police action.” E.F. v. State, 110 So.3d 101, 105 (Fla. 4th DCA 2013) (emphasis omitted) (citations and internal quotation marks omitted).
Here, the officer observed T.B. and another person walking “slowly” between two buildings in an apartment complex late at night. T.B. was “looking around.” At that point, the officer did not know T.B. was not a resident of the complex and he did not see any tools or weapons on T.B.’s person.
Our courts have found that behavior even more suspicious than T.B.’s did not constitute sufficient evidence of loitering and prowling. See, e.g., E.F., 110 So.3d at 104 (finding that even in the light most favorable to the state, juvenile’s morning activity of “walking slowly while looking into carports and sides of houses in an *150 area where burglaries had occurred, and ... carrying a large satchel bag along with a yellow flashlight hanging out of his pants pocket” was “not unusual or indicative of incipient criminal activity,” and “was not the type [of conduct] that would warrant a finding that a breach of the peace was imminent or the public safety was threatened”); A.L. v. State, 84 So.3d 1272, 1273-74 (Fla. 3d DCA 2012) (finding insufficient evidence of loitering and prowling where juvenile and his friend were observed in the early evening hours in the alleyway between two apartment buildings looking into windows but were not observed carrying tools or attempting to pry open windows, and where the juvenile briefly concealed himself in a staircase); K.H. v. State, 8 So.3d 1155, 1156 (Fla. 3d DCA 2009) (finding officer had no probable cause of loitering and prowling where juveniles were observed peering into a vehicle at 11:00 p.m. but they did not try the door handles and had nothing in their hands); G.G., 903 So.2d at 1032-34 (holding evidence that two male juveniles emerged from behind a shopping plaza at 3:45 a.m., ran upon seeing the police car, and that one of them was carrying an object later determined to be a piece of brick was not sufficient evidence of loitering and prowling where the charged juvenile initially gave a false name but then provided his correct name, date of birth, and address).
Even if the evidence could be said to be sufficient to establish the first element of the offense, it was not sufficient to establish the second element.
T.B.’s behavior, that is, walking between two buildings late at night in an apartment complex, did not suggest an imminent breach of the peace or threat to public safety, especially where T.B. identified himself and explained his presence in the complex. See G.G., 903 So.2d at 1033-34 (finding that defendant’s “brief flight” and “his initial failure to give the deputy his correct name” justifiably alarmed officer, but that where the defendant “shortly thereafter revealed his correct name, address, and date of birth,” the officer was “unable to articulate any fact that demonstrated the defendant[’]s conduct posed a threat to public safety or an imminent breach of the peace”).
This case is factually similar to K.R.R. v. State, 629 So.2d 1068 (Fla. 2d DCA 1994), where the court found the evidence was insufficient to establish a loitering and prowling. There, an officer received a report of an auto theft at a funeral home after midnight. Shortly after receiving the report, he encountered the juvenile and another person walking along railroad tracks away from the direction of the funeral home. The officer testified that the city curfew for teens began at 10:30 p.m.; however, the defendant was not cited for violating the curfew. The Second District wrote:
Unquestionably, under the circumstances, [the officer’s] stop of defendant was proper, in light of the reported crime at the nearby funeral parlor. However, since the offense of loitering and prowling is a misdemeanor, all elements of the offense must occur in the officer’s presence. The fact remains that [the officer] never actually saw defendant do anything in his presence other than walk along railroad tracks at 12:30 a.m. This may be a violation of the Lake Wales curfew, for which in any event he was not cited, but it otherwise in itself appears to be legally insufficient evidence of loitering and prowling.
Id. at 1070 (citations omitted).
Likewise here, the officer’s observations amounted to nothing more than T.B. and *151 another person walking slowly between two apartment buildings late at night. This behavior, standing alone, is insufficient to establish loitering and prowling.[2] Accordingly, we hold the trial court erred in denying the motion for judgment of dismissal, we reverse the finding of guilt, and we remand for the court to vacate the disposition order.
T.B. also argues the finding of guilt in the violation of probation case should be reversed, because it was premised on the loitering and prowling charge. We agree. We recognize that the burden of proof in the violation of probation case is greater weight of the evidence rather than proof beyond a reasonable doubt. See Hernandez v. State, 723 So.2d 886, 887 (Fla. 4th DCA 1998). However, under either burden of proof, the evidence was insufficient for the fact finder to determine the state had met its burden with respect to the loitering and prowling charge. Accordingly, we reverse the finding of guilt in the violation of probation case and remand for the trial court to vacate the disposition order.

Reversed and remanded with instructions.

TAYLOR and GERBER, JJ., concur.

. T.B. was serving probation for a simple battery at the time he was alleged to have committed the loitering and prowling.

. While T.B. and his friend may have been guilty of trespassing or a curfew violation (even though not cited for either), at the time the officer made his observations, he did not know whether T.B. lived in the complex.