**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Joseph CHRISTMAS, a/k/a Jason Carter, Defendant–Appellant.**

**No. 99–4631.**

United States Court of Appeals, Fourth Circuit.

Argued: May 5, 2000

Decided: Aug. 2, 2000

---

**ARGUED:** John A. Dusenberry, Jr., Assistant Federal Public Defender, Greensboro, NC, for Appellant. Lawrence Patrick Auld, United States Attorney's Office, Greensboro, NC, for Appellee. **ON BRIEF:** Louis C. Allen, III, Federal Public Defender, Greensboro, NC, for Appellant. Walter C. Holton, Jr., U.S. Attorney, Sandra J. Hairston, Assistant U.S. Attorney, Greensboro, NC, for Appellee.

Before WILKINSON, Chief Judge, NIEMEYER, Circuit Judge, and FRIEDMAN, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Chief Judge WILKINSON wrote the opinion, in which Judge NIEMEYER and Judge FRIEDMAN joined.

## OPINION

WILKINSON, Chief Judge:

Joseph Christmas was charged with possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1). The district court denied Christmas' mo-

tion to suppress drugs and a firearm seized during his arrest. Christmas subsequently entered a conditional plea of guilty and was sentenced to eighty-eight months imprisonment. Christmas appeals the district court's suppression ruling, arguing that an unsolicited tip from a neighbor was not adequate grounds for a *Terry* stop. Because face-to-face encounters with informants are altogether different from anonymous tips and because the tip here furnished reasonable suspicion for the protective pat-down of defendant, we affirm the judgment of the district court.

## I.

On May 7, 1998, Officers Anthony Smith and Jack Cates were investigating a homicide in the area of Mallard and Queen Streets in Durham, North Carolina. While speaking with a citizen regarding the homicide, Officer Smith was approached by a neighborhood resident. She informed Smith that, "instead of talking to this gentleman, you need to come and deal with the drugs and the guns that these guys have on the porch two doors down from me." The informant indicated that she lived at 309 Canal Street. She stated that the residence that was the object of her complaint was two houses away at 401 Canal Street. She did not give her name. The informant, who was intoxicated, insisted that the officers investigate her complaint immediately.

In response to her entreaties, the officers proceeded the short distance to 401 Canal Street. The informant did not accompany them. When they arrived, Officer Smith saw on the porch one woman and three men. Smith recognized one of the men as Christmas. Smith advised all four people on the porch that he was investigating a report about narcotics and gun activity on the premises. Smith then stated that he was going to conduct a pat-down search for the safety of all concerned. Smith twice asked Christmas if he was carrying any weapons. Although Christmas denied being armed both times,

Smith's pat-down of Christmas revealed the butt of a loaded .357 Magnum. After Smith placed Christmas under arrest, he conducted a more thorough search. This search yielded a plastic bag containing a large amount of crack cocaine and marijuana.

Christmas was charged with possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1). Christmas moved to suppress the evidence seized during the search, arguing that the police lacked reasonable suspicion to conduct a *Terry* stop and frisk. The district court denied the motion. Christmas subsequently entered a conditional plea of guilty to the charge, reserving the right to appeal the district court's adverse ruling on his suppression motion. Christmas now appeals that ruling and also his subsequent sentence under the federal Sentencing Guidelines.

## II.

██ "[T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *see also Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Christmas contends that, in light of *Florida v. J.L.*, —— U.S. ——, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), a tip from a woman living two doors away from the porch where he had gathered did not provide reasonable suspicion for the protective pat-down of his person.

We disagree. Contrary to Christmas' assertions, *J.L.* is not controlling. In *J.L.*, the police received an anonymous telephone tip that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun. *Id.* at 1377. The police did not know the informant's name nor could they verify the informant's credibility. Apart from the

tip, the police had no reason to suspect the young man of illegal conduct. *Id.* The Supreme Court held that the tip, without more, was insufficient to justify a *Terry* stop and frisk. *Id.* The Court identified two problems with allowing anonymous tips to serve as the sole basis for a *Terry* stop. First, anonymous tips "alone seldom demonstrate[ ] the informant's basis of knowledge or veracity." *Id.* at 1378 (quoting *Alabama v. White*, 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)). Second, since anonymous tipsters cannot be held responsible for fabricated allegations, permitting such tips to result in a *Terry* stop would increase the potential for harassment through false accusation. *Id.*

■ A desire to ensure the informant's credibility and accountability thus underlies the Court's concern with anonymous tips. Turning first to credibility, the reasonable suspicion standard "requires that a tip be reliable in its assertion of illegality." *Florida v. J.L.*, —— U.S. at ——, 120 S.Ct. at 1379. When police receive an anonymous telephone tip, it is difficult for them to determine the source and reliability of the caller's knowledge. *See id.* at 1378; *id.* at 1381 (Kennedy, J., concurring) ("If the telephone call is truly anonymous, the informant has not placed his credibility at risk and can lie with impunity.").

The face-to-face encounter here did not pose this same credibility problem. Officer Smith's conversation with the informant provided him with an opportunity to assess her credibility and demeanor. Two aspects of the encounter supported the credibility of the informant's report. The first was the close proximity of the informant's residence to the illegal activities at 401 Canal Street. It was reasonable for Officer Smith to conclude that a woman living two doors from 401 Canal Street would know if drugs were being dealt from the porch there. Second, the informant's proximity to 401 Canal Street at the time she spoke with Officer Smith further bolstered her credibility. By informing the police about her neighbors' illegal activity, the informant exposed herself to the risk of reprisal. The fact that she provided the report to uniformed police officers in public only increased the probability that someone associated with the illegal activity would witness her aid to the police.

Unlike the anonymous tipster, a witness who directly approaches a police officer can also be held accountable for false statements. As the Supreme Court has observed, citizens who personally report crimes to the police thereby make themselves accountable for lodging false complaints. *See Illinois v. Gates*, 462 U.S. 213, 233–34, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Adams v. Williams*, 407 U.S. 143, 147 & n. 2, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Here the informant provided her home address to the officers. In doing so, the informant exposed herself to the repercussions of misleading or deceiving the police.

All of these factors make the information provided in this case more trustworthy and reliable than the anonymous tip at issue in *J.L.* Indeed, courts have had no difficulty distinguishing between cases involving face-to-face encounters with informants and cases involving anonymous tipsters. *See Adams v. Williams*, 407 U.S. 143, 146–47, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *United States v. Salazar*, 945 F.2d 47, 50–51 (2d Cir.1991) ("[T]hough the informant in the present case had not previously been relied on by the officers, a face-to-face informant must, as a general matter, be thought more reliable than an anonymous telephone tipster."); *United States v. Gorin*, 564 F.2d 159, 160–61 (4th Cir.1977) (same); *United States v. Sierra–Hernandez*, 581 F.2d 760, 763 (9th Cir. 1978) (same).

Christmas contends, however, that the *Terry* pat-down was not justified because the informant's statement was conclusory, the police officer had no prior knowledge of the informant's credibility, and the officer did not corroborate her story. But accepting Christmas' argument would mean incorporating into the reasonable suspicion determination a rule similar to

the inflexible "two-pronged test" for probable cause of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Doing so would make little sense, especially since the *Aguilar/Spinelli* standard has been relaxed even in the context of probable cause, *see Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Alabama v. White*, 496 U.S. 325, 328, 330–31, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir.1990), and replaced by a more flexible test permitting a balanced assessment of the relative value and reliability of different informants' tips. *See Gates*, 462 U.S. at 231–35, 103 S.Ct. 2317.

■ Moreover, Christmas' statement that no evidence corroborated the informant's tip is simply false. Officer Smith knew Christmas and found it odd that he would be present on Canal Street, given the tensions between gangs based near Canal Street and gangs from Christmas' part of town. Based on this information, it was reasonable for Officer Smith to surmise that Christmas' presence on the porch created a potential for violence. And although Christmas' presence in a high crime area is not alone sufficient to justify a *Terry* stop, "[t]he fact that the stop occurred in a 'high crime area' [is] among the relevant contextual considerations in a *Terry* analysis." *Illinois v. Wardlow*, —— U.S. ——, ——, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000); *see also United States v. Perrin*, 45 F.3d 869 (4th Cir.1995). Courts are not required to sever the relationships that citizens and local police forces have forged to protect their communities from crime. Petitioner argues for a rule that comes close to disqualifying face-to-face discussions with residents as a basis for a *Terry* stop and frisk. To rule out such conversations as a basis for reasonable suspicion would be a serious step. A community might quickly succumb to a sense of helplessness if police were constitutionally prevented from responding to the face-to-face pleas of neighborhood residents for assistance. Officers in turn are entitled to investigate such reports without jeopardizing their personal safety. Any other constitutional rule would destroy the basis for effective community police work.

### III.

■ Christmas also contests the two-level enhancement in his sentencing guideline offense level for possession of a dangerous weapon. This claim too lacks merit. Since Christmas possessed a firearm, he falls plainly under the language of the enhancement. *See* U.S.S.G. § 2D1.1(b)(1) ("If a dangerous weapon (including a firearm) was possessed, increase by 2 levels."). Indeed, Christmas does not argue otherwise. Instead Christmas contends, apparently under a theory of double jeopardy, that the enhancement cannot apply because he was previously convicted in state court for the same possession of the same firearm. Under the doctrine of dual sovereignty, however, federal prosecutions are not barred by a previous state prosecution for the same or similar conduct. *See Abbate v. United States*, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959). Here the government could have prosecuted Christmas under 18 U.S.C. § 924(c)(1) for possession of the firearm, notwithstanding his state conviction. If the federal prosecution is allowed under the law, then the enhancement under the guidelines must also be allowable.*

### IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*

---

\* Of course, if the conduct upon which the offense level enhancement was based also served as the factual basis for the underlying federal conviction, the enhancement would not apply. *See* U.S.S.G. § 2K2.4, Commentary Note 2. That is not the case here.