

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-10-2005

# USA v. Ali

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1806

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Ali" (2005). *2005 Decisions*. Paper 1034.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1034

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-1806

———

UNITED STATES OF AMERICA

v.

SHUAIB ALI

<u>Appellant</u>

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 03-cr-0419-1)
District Judge: Honorable Legrome D. Davis

———

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 9, 2005

Before: AMBRO, VAN ANTWERPEN, and TASHIMA[*], <u>Circuit Judges</u>

(Filed:  June 10, 2005)

———

OPINION OF THE COURT

———

[*] The Honorable A. Wallace Tashima, Senior United States Circuit Judge for the Ninth Circuit, sitting by designation.

VAN ANTWERPEN, Circuit Judge.

Appellant Shuaib Ali seeks review of a determination by the United States District Court for the Eastern District of Pennsylvania that he was properly stopped and searched pursuant to Terry v. Ohio, 392 U.S. 1 (1968), and consequently that the evidence recovered from this search was properly admitted into evidence. For the following reasons, we affirm.

## I. Facts

Because we write solely for the parties, we need state only the facts pertinent to our analysis. On May 4, 2002, Officer Francis Quinn and his partner were approached by an agitated Bryant Bustion. Mr. Bustion reported that he had been driving when he received a cellular telephone call from his daughter explaining that Appellant was holding her hostage at gunpoint. After receiving this call, Mr. Bustion drove back to Philadelphia and headed toward 5146 Carlisle Street, the address where his daughter told him she was being held. It was in the vicinity of this address that Mr. Bustion happened upon Officer Quinn. There is no indication in the record as to how much time had elapsed between Mr. Bustion's conversation with his daughter and his contact with Officer Quinn.

Officer Quinn then followed Mr. Bustion to 5146 Carlisle Street, approximately one block away. Upon arrival, two men (and possibly one woman) were standing at the corner of Carlisle Street and Duncanon Street, approximately 30-40 feet from 5146 Carlisle Street. Mr. Bustion exited his vehicle, and identified one of the men as

2

Appellant, his daughter's former boyfriend and the alleged kidnapper. As the police and Mr. Bustion approached the men, neither fled, there was no visible indication that either possessed a weapon, and neither was doing anything suspicious or unlawful. Nonetheless, Officer Quinn left his vehicle, grabbed Appellant, took him to a nearby fence, and proceeded to pat him down. As Officer Quinn was searching, Appellant lowered one of his hands and removed a gun from underneath his sweatshirt. Officer Quinn grabbed it, forced Appellant down onto the patrol car, and placed him under arrest. It was only after the arrest was made that Mr. Bustion's daughter exited 5146 Carlisle Street and confirmed that Appellant had held her at gunpoint earlier in the day.

Appellant was indicted in United States District Court on one count of illegally possessing a firearm in violation of 18 U.S.C. § 922(g)(1). The District Court denied a motion to suppress all physical evidence, and Appellant consequently entered a conditional guilty plea, reserving the right to appeal the District Court's denial of his suppression motion. Appellant was sentenced to a term of 32 months imprisonment, followed by a 36-month term of supervised release. This sentence was the result of enhancements based upon factual findings made by the District Court but not admitted in the guilty plea. This timely appeal followed.

## II. Jurisdiction and Standard of Review

The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. Our jurisdiction over the District Court's denial of the suppression motion is grounded in

3

28 U.S.C. § 1291. We exercise plenary review over both the District Court's conclusions regarding reasonable suspicion and its application of law to the facts of this case. United States v. Robertson, 305 F.3d 164, 167-68 (3d Cir. 2002). We review the District Court's factual findings for clear error. Id. at 168 (quoting United States v. Riddick, 156 F.3d 505, 509 (3d Cir. 1998)).

### III. Discussion

It is well-established that, consistent with the Fourth Amendment and the Supreme Court's holding in Terry v. Ohio, "an officer may . . . conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000). One of the purposes of such a stop is the protection of the police officer and innocent bystanders:

> [W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

Terry, 392 U.S. at 30-31. This holding was expanded by the Court in Adams v. Williams, 407 U.S. 143 (1972), which held that a police officer may make a limited protective search for concealed weapons when he has reason to believe that the suspect is armed and dangerous, even though the officer had not personally observed behavior that would give

4

rise to a reasonable suspicion.  Id. at 147.  In evaluating what is a reasonable, articulable suspicion, we must consider the totality of the circumstances, including the police officer's knowledge, experience, and common sense judgments about human behavior. See Robertson, 305 F.3d at 167; United States v. Valentine, 232 F.3d 350, 353 (3d Cir. 2000).  When reviewing the totality of the circumstances, we must give substantial deference to the inferences drawn by an officer on the scene.  Valentine, 232 F.3d at 355. Because Officer Quinn's sole basis for searching Appellant was Mr. Bustion's statement that Appellant had held his daughter at gunpoint earlier in the day, the narrow question before us is whether such information is sufficient to create the "minimal level of objective justification" required to support a Terry stop and frisk.  See, e.g., United States v. Sokolow, 490 U.S. 1, 7 (1989).

It is beyond a doubt that police officers can base their reasonable suspicions upon information offered by another person.  Adams, 407 U.S. at 147.  In Valentine, we explained why a tip given face-to-face is inherently more reliable than would be an anonymous tip conveying the same information.  See Valentine, 232 F.3d at 554-55. When a person with information relays it face-to-face to a police officer, the officer has an opportunity to assess the informant's veracity and demeanor.  Id.  Of equal importance, an informant who offers a face-to-face tip and then remains with the police exposes himself to criminal liability should it be discovered that he lodged a false complaint, thus contributing to the informant's belief in the information's truthfulness.  Id. (citing United

States v. Christmas, 222 F.3d 141, 144 (4th Cir. 2000)).  Similarly, one who alerts law enforcement of nearby criminal activity is exposed to a risk of retaliation from the person named, making it less likely that he is lying.  Id.

In this case, each of these indicia of reliability were present.  Mr. Bustion approached Officer Quinn, and stated that his daughter had called him and said she was being held at gunpoint one block away, and was noticeably agitated as he relayed this information to the police.  Mr. Bustion then offered to lead the police to the location where his daughter said she was being held.  Upon arrival, he left his vehicle and approached Appellant, identifying Appellant as his daughter's ex-boyfriend and demanding that Appellant tell him where she was.  At that point, there was sufficient evidence for Officer Quinn to have a reasonable suspicion that Appellant may have been armed, and had recently engaged in a violent felony.  As such, he was justified in searching Appellant for weapons, both for his safety as well as that of his partner and Mr. Bustion.

We recognize that, in Valentine, we cautioned against the reliability of informants who acquire information from stale or second-hand sources.  Valentine, 232 F.3d at 354.  Indeed, the elapsed time between an informant's observation and his reporting of a crime or the person from which he acquired such information can significantly affect the reliability of a tip.  However, we cannot conclude, merely because Ms. Bustion spoke with her father rather than a 911 operator and because Mr. Bustion was forced to drive an

indeterminate distance to reach Officer Quinn, that the information was inherently unreliable. It was sufficient to give Officer Quinn a reasonable suspicion that Appellant had committed a crime and was armed, and Officer Quinn was thus justified in searching Appellant for weapons. The District Court therefore properly admitted the gun into evidence.

We turn next to Appellant's assertion that the District Court improperly enhanced his sentence with factual findings not made by a jury, in violation of United States v. Booker, 543 U.S. __, 125 S.Ct. 738 (2005). It is undisputed that Appellant waived his rights to attack the length of his sentence as part of his plea agreement absent a sentence that exceeded the statutory maximum or an erroneous departure upward from an otherwise applicable sentencing guideline range. Neither situation exists here. Where a criminal defendant has voluntarily and knowingly entered into a plea agreement in which he or she waives the right to appeal, the defendant is not entitled to resentencing in light of Booker. United States v. Lockett, 406 F.3d 207, 213 (3d Cir. 2005). Because we are satisfied that Appellant entered into a knowing and voluntary plea agreement, his appellate waiver forecloses his argument under Booker.