**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-4108**

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

        v.

JOHN D. WASHINGTON,

                Defendant - Appellant.

Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg.  Irene M. Keeley, District Judge.  (1:08-cr-00042-IMK-JSK-1)

Submitted:  August 24, 2009          Decided:  October 13, 2009

Before NIEMEYER, MOTZ, and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Katy J. Ratai, Assistant Federal Public Defender, Clarksburg, West Virginia, for Appellant.  Sharon L. Potter, United States Attorney, Zelda E. Wesley, Assistant United States Attorney, Clarksburg, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

John D. Washington was indicted on one count of being felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) (2006). Subsequent to the district court's denial of his motion to suppress evidence seized as the result of an investigative stop by Officer Aaron Dalton, Washington entered a conditional guilty plea, preserving the right to appeal the district court's denial of his motion. The district court sentenced Washington to thirty months' imprisonment. On appeal, Washington contends that the totality of the circumstances shows that Officer Dalton did not have reasonable suspicion to effectuate a Terry[*] stop because: (1) the 911 call did not provide significant indicia of reliability; (2) Washington's behavior was not evasive; and (3) Fairmont Hills was not a high crime area. Finding no error, we affirm.

In reviewing a district court's ruling on a motion to suppress, we defer to the district court's factual findings, setting them aside only if clearly erroneous, and review its legal conclusions de novo. United States v. Uzenski, 434 F.3d 690, 704 (4th Cir. 2006). When the district court has denied a motion to suppress, "the evidence must be construed in the light most favorable to the Government." Id.

---

[*] Terry v. Ohio, 392 U.S. 1 (1968).

Consistent with the Fourth Amendment, a police officer may conduct a brief investigatory stop, known as a Terry stop, "when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (citing Terry, 392 U.S. at 30). In assessing whether a Terry stop was supported by reasonable, articulable suspicion, we must consider the "totality of the circumstances . . . to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." United States v. Arvizu, 534 U.S. 266, 273 (2002) (internal quotation marks and citation omitted); see also United States v. Sokolow, 490 U.S. 1, 8 (1989). "Thus, factors which by themselves suggest only innocent conduct may amount to reasonable suspicion when taken together." United States v. Perkins, 363 F.3d 317, 321 (4th Cir. 2004). While an officer's "hunch" will not justify a stop, Terry, 392 U.S. at 27, we "give due weight to common sense judgments reached by officers in light of their experience and training." Perkins, 363 F.3d at 321.

Washington first contends that the 911 call lacked detailed content and reliability. "In cases where an informant's tip supplies part of the basis for reasonable suspicion, we must ensure that the tip possesses sufficient indicia of reliability." Perkins, 363 F.3d at 323. "Where the informant is known . . . an officer can judge the credibility of

3

the tipster firsthand and thus confirm whether the tip is sufficiently reliable to support reasonable suspicion." Id. A known informant's tip is generally more reliable than that of an unknown informant because the known informant "can be held responsible if her allegations turn out to be fabricated." Florida v. J.L., 529 U.S. 266, 270 (2000).

The informant in this case, Jewel Douglas, identified herself to the 911 dispatcher and, as the district court noted, the context of the call made it clear that Douglas was an employee of the Fairmont Hills apartment complex and was in the office watching the suspicious activity. Thus, the basis of Douglas's knowledge was apparent and her proximity to the activity supports her credibility. See United States v. Christmas, 222 F.3d 141, 144 (4th Cir. 2000) (stating that the informant's close proximity to the illegal activity supported her credibility). Moreover, the officers knew where to find Douglas if they determined the tip was false.

Further, "[w]here . . . an officer had objective reason to believe that a tip had some particular indicia of reliability, the tip can rightfully support an officer's decision to investigate further." Perkins, 363 F.3d at 325 (internal quotation marks, alteration, and citation omitted). When Douglas called 911, she indicated that she could see the "drug dealers" sitting under the pavilion and stated that they

4

rode around in a white car. The 911 dispatcher sent Officer Dalton to Fairmont Hills, telling him that there was "drug activity going on in or around the vehicle." When Officer Dalton arrived, the only vehicle in the parking lot matching Douglas's description was the vehicle Washington occupied, which was parked in front of the pavilion. Therefore, we find that the 911 call had sufficient indicia of reliability.

Second, Washington contends that he was not acting in an evasive manner. "Evasive conduct, although stopping short of headlong flight, may inform an officer's appraisal of a streetcorner encounter." United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993). Here, Washington got out of his vehicle as soon as he saw Officer Dalton arriving in a marked police car, and quickly walked toward the back of his vehicle, looking back over his shoulder and holding his hand around the waistband of his pants. Officer Dalton testified that Washington's demeanor suggested that Washington was leaving because of the officers' arrival. Thus, we find that Washington's behavior was evasive and supported Officer Dalton's reasonable suspicion.

Finally, Washington argues that Officer Dalton had no basis to consider Fairmont Hills a high crime area, because he had never made a drug-related arrest in the area. "[O]fficers are not required to ignore the relevant characteristics of a location" when deciding if further investigation is warranted;

5

thus, an individual's presence in a high crime area is relevant in assessing reasonable suspicion. Wardlow, 528 U.S. at 124. However, mere presence in a high crime area alone does not support reasonable suspicion. Id.; see also Lender, 985 F.2d at 154 (stating that "[w]hile the defendant's mere presence in a high crime area is not by itself enough to raise reasonable suspicion, an area's propensity toward criminal activity is something that an officer may consider."). We credit an officer's practical experience when assessing whether the officer had reasonable suspicion. Lender, 985 F.2d at 154.

Officer Dalton testified that he had been a City of Fairmont police officer for seven years and was assigned to patrol the Fairmont Hills area. He further testified that the Fairmont Police Department received frequent calls from Fairmont Hills and he was there, on average, at least once a week. Officer Dalton stated that he had, at times, made two to three arrests a week at Fairmont Hills, mainly for alcohol-related and domestic issues. Although Officer Dalton could not recall personally making any drug arrests at Fairmont Hills, he was aware that there was a lot of drug activity there and knew drug arrests had been made there. Officer Dalton also testified that he was aware of Fairmont Hills's drug-related nicknames. We find that, based on his experience and knowledge, Officer Dalton

6

had a reasonable basis to believe Fairmont Hills was a high crime area.

Viewing the evidence in the light most favorable to the Government, based on the totality of the circumstances, we conclude that Officer Dalton had reasonable, articulable suspicion to effectuate the Terry stop.  The known informant's tip had sufficient indicia of reliability, Washington's behavior was evasive, and Fairmont Hills was a high crime area.  Taking these facts together, it is clear that Officer Dalton had reason to believe Washington was involved in criminal activity.  Therefore, the Terry stop did not violate Washington's Fourth Amendment rights and the district court properly denied Washington's motion to suppress the evidence obtained as a result of the stop.  Accordingly, we affirm the district court's judgment.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED