Affirmed by published opinion. Judge SHEDD wrote the majority opinion, in which Chief Judge TRAXLER joined. Judge GREGORY wrote a dissenting opinion.
OPINION
SHEDD, Circuit Judge:
Antonio Bernard Griffin appeals his conviction and sentence for being a felon in possession of a firearm. See 18 U.S.C. § 922(g). Griffin contends that the district court erred in denying his motion to suppress the firearm by holding that (1) the police officers who arrested him had reasonable suspicion to perform an investigatory stop of his vehicle under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and (2) the officers were justified in conducting a protective search of his vehicle under Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). For the following reasons, we reject these contentions and affirm.
I.
In reviewing the denial of a suppression motion, we construe the facts in the light most favorable to the government United States v. Murphy, 552 F.3d 405, 409 (4th Cir.2009). The evidence presented during the suppression hearing establishes that the Value-Lodge Motel in Charlotte, North Carolina, was well known to officers of the Charlotte-Mecklenburg Police Department as a location for violent crime and drug trafficking. On the evening of September 28, 2005, someone called 911 from a second floor room of the Value-Lodge reporting a man in possession of a gun. The 911 call center relayed this information, including the caller’s room number, to Officer Crystal Lee Clifton, and she responded to the call. Upon arriving at the Value-Lodge, Officer Clifton proceeded to the second floor room from which the call was made and talked with one of the room’s occupants (the “informant”) who was aware that the call had been placed. Shortly thereafter, Officer Brian Carey, who was also responding to the 911 call, arrived at the Value-Lodge.[1] *151 While Officer Clifton was talking to the informant, a white Cadillac drove past in the parking lot below, and the informant immediately pointed to the vehicle and identified the driver as the man with the gun. Officer Carey returned to his patrol car and pursued the Cadillac which was exiting the Value-Lodge parking lot. He proceeded approximately 50 feet and then entered a nearby parking lot where the Cadillac was turning around. Officer Clifton remained with the informant.
Officer Carey then initiated a traffic stop of the vehicle and its sole occupant, Antonio Griffin. When Griffin exited the vehicle, he “started looking around” and “kept turning around like he was going to take off running.” J.A. 27, 43. Officer Carey conducted a Terry frisk of Griffin and, out of concern for his safety, handcuffed Griffin and placed him in the backseat of the patrol car. While Officer Carey was speaking with Griffin, Officer Clifton and another officer arrived on the scene. At this time, an individual approached the officers claiming to know Griffin, and onlookers from the motel gathered at the scene. Officer Clifton thereafter performed a search of the passenger compartment of Griffin’s car, finding a pistol on the driver’s side floorboard. Officer Clifton seized the weapon, and Officer Carey placed Griffin under arrest for carrying a concealed weapon.
Griffin was subsequently indicted for possessing the pistol after having been previously convicted of a felony, in violation of section 922(g). Griffin moved to suppress the pistol and other evidence not relevant to his appeal. Following a suppression hearing during which Officers Carey and Clifton testified, the district court ruled that the officers did not violate Griffin’s Fourth Amendment rights. Relying on our decisions in United States v. Perkins and United States v. Christmas, 222 F.3d 141 (4th Cir.2000), the district court concluded that Officer Carey had reasonable suspicion to conduct a traffic stop based upon the face-to-face encounter between Officer Clifton and the informant. The district court also concluded that the protective search of Griffin’s vehicle was justified. Thereafter, Griffin conditionally pled guilty, retaining the right to appeal the district court’s order denying the suppression motion. After accepting this plea, the district court sentenced Griffin to 40 months of imprisonment.
Griffin filed a timely notice of appeal, and we possess jurisdiction under 28 U.S.C. § 1291. On appeal, Griffin argues that both the stop of his vehicle and the protective search of his vehicle were unconstitutional.
II.
We review the district court’s factual findings for clear error and its legal conclusions de novo. Murphy, 552 F.3d at 409. The district court’s ultimate conclu *152 sion that the traffic stop and protective search are constitutional is a legal conclusion which we review de novo. United States v. Reaves, 512 F.3d 123, 126 (4th Cir.2008).
A.
A law enforcement officer may initiate a brief investigatory stop if the officer has reasonable suspicion to believe that “criminal activity may be afoot.” Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In determining whether an officer had reasonable suspicion, we view the totality of the circumstances to determine whether the officer had “a particularized and objective basis for suspecting the particular person stopped of criminal activity.” United States v. Cortez, 449 U.S. 411, 417-418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Although the reasonable suspicion standard “defies precise definition,” United States v. McCoy, 513 F.3d 405, 411 (4th Cir.2008), it is less demanding than probable cause, Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), and falls “considerably short of satisfying a preponderance of the evidence standard,” United States v. Arvizu, 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).
In cases such as this, where the officer met with the informant in a face-to-face encounter,[2] we have considered numerous factors to determine whether the officer had reasonable suspicion to effect a Terry stop. For example, we have examined whether the officer had the opportunity to observe the informant’s credibility and demeanor and whether the officer could later hold the informant accountable for making false accusations. See, e.g., Christmas, 222 F.3d at 144.[3] We have also considered whether the informant reported to the police in public, exposing himself to retaliation from the suspect and increasing the informant’s reliability. See, e.g., id. We also have looked to the informant’s proximity to the reported activity as a factor in determining his reliability. See, e.g., id.; Perkins, 363 F.3d at 322. Additionally, we have placed importance on the officer’s personal experience in investigating similar activity at the reported location in justifying the stop. See, e.g., Perkins, 363 F.3d at 322. Finally, the Supreme Court has stated that less scrutiny is required as to an informant’s basis of knowledge where a citizen whose honesty has not been questioned reports criminal activity “which if fabricated would subject him to criminal liability.” Illinois v. Gates, 462 U.S. 213, 233-34, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
*153 Here, Officer Clifton spoke with the informant and remained with the informant when Officer Carey left in pursuit of Griffin, giving her further opportunity to observe the informant’s credibility and demeanor. Having observed the informant’s physical appearance and location, the officers could have returned to the Value-Lodge and tracked him down to hold him accountable if his accusations had proven false. The informant met with Officer Clifton in public, thereby exposing himself to retaliation from Griffin. In addition, the informant was in close proximity to Griffin’s vehicle when he spoke with Officer Clifton. Further, Officer Carey was familiar with the Value-Lodge and had taken numerous calls reporting dangerous weapons from that motel, thereby contributing to his reasonable suspicion for the stop. Finally, there are no facts in the record that call into question the informant’s honesty or motivation. In short, we agree with the district court that the circumstances of the face-to-face encounter between the informant and Officer Clifton provided sufficient reasonable suspicion to justify the Terry stop of Griffin’s vehicle.[4]
B.
Griffin also challenges the actual search of his vehicle which resulted in the seizure of the pistol. When officers conduct a Terry stop of an automobile,
the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.
Long, 463 U.S. at 1049, 103 S.Ct. 3469 (internal quotation marks omitted). In order to conduct a lawful protective search of a stopped vehicle under Long, an officer must possess a reasonable belief of both (1) the suspect’s dangerousness and (2) the possibility that the suspect might gain immediate control of any weapons inside the vehicle. United States v. Holmes, 376 F.3d 270, 276 (4th Cir.2004).
The Supreme Court has observed that, where an officer concludes that a suspect is armed, the suspect “pose[s] a serious and present danger to the safety of the officer.” Pennsylvania v. Mimms, 434 U.S. 106, 112, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (per curiam); see also J.L., 529 U.S. at 272, 120 S.Ct. 1375 (recognizing “the serious threat that armed criminals pose to public safety”). Officers may also consider a suspect’s evasive behavior in analyzing the existence of reasonable suspicion to believe that an individual is armed and dangerous. United States v. Mayo, 361 F.3d 802, 807-08 (4th Cir.2004). Furthermore, officers may consider “the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation.” Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). As to the first prong of the Holmes test, the circumstances of the stop justified a reasonable belief in Griffin’s dangerousness. First, once the officers arrived on the scene, an informant met face-to-face with Officer Clifton and pointed out the *154 driver of Griffin’s vehicle as the man with the gun. Second, at the time of the protective search of the vehicle, Officer Carey was responding to a firearm call in a high-crime neighborhood where he had personally taken numerous calls reporting dangerous weapons.[5] Third, Griffin’s evasive behavior when Officer Carey stopped his vehicle heightened the officers’ concern that Griffin was armed and dangerous.[6] These factors, taken together, gave the officers reasonable suspicion to believe that Griffin could be dangerous.[7]
The second prong, concerning the possibility that the suspect might gain immediate control of any weapons inside the vehicle, is also satisfied. Although Griffin was restrained in the backseat of the police vehicle at the time of the search, he was being detained at that time solely pursuant to the Terry stop. If Griffin had been released after the brief detention, as he presumably would have been, he would have regained access to his vehicle and any weapon inside. See United States v. Elston, 479 F.3d 314, 320 (4th Cir.2007) (“[A] protective search is authorized even if the suspect is under police restraint at the time the search is conducted, because the suspect may be able to escape such restraint, or may later regain access to the vehicle if he is not arrested.”).[8] Therefore, given the circumstances confronting the officers, the brief protective search of Griffin’s vehicle was proper.
III.
For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

. The dissent’s assertion that the informant was "gender-less” is factually incorrect. Instead, Officer Carey testified that the informant was a "gentleman.” J.A. 60, 25. Further, to the extent that the officers* ability to recall these details is pertinent, the district court found the officers' testimony credible. We defer to the district court’s credibility findings, as “it is the role of the district court to observe witnesses and weigh their credibili *151 ty during a pre-trial motion to suppress.” United States v. Abu Ali, 528 F.3d 210, 232 (4th Cir.2008) (citing United States v. Murray, 65 F.3d 1161, 1169 (4th Cir.1995)). See also United States v. Clark, 538 F.3d 803, 812-13 (7th Cir.2008) (upholding the district court's reliance on the testimony of a witness despite the fact that he was an admitted perjurer and drug user who failed to recall specific details about his deals with the defendant). There is no constitutional requirement that police record the identifying information of an informant, particularly in such rapidly evolving circumstances as occurred here. As we have observed, "We cannot afford to read the Fourth Amendment to require officers to wait ... perhaps until innocent bystanders are physically harmed, before taking reasonable, preventive measures.” United States v. Perkins, 363 F.3d 317, 328 (4th Cir.2004). See also United States v. Sanchez, 519 F.3d 1208, 1211 (10th Cir.2008) (“We do not fault the officer’s choice to forgo extensive credibility checking in order to quickly respond.”).

. Florida v. J.L., 529 U.S. 266, 270, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) (holding that an anonymous tip in a 911 call must bear additional "indicia of reliability” to create reasonable suspicion), on which Griffin relies, is inapplicable here because face-to-face tips are "altogether different from anonymous tips.” Christmas, 222 F.3d at 143. See also United States v. DeQuasie, 373 F.3d 509, 523 (2004) (distinguishing anonymous tips from face-to-face encounters); United States v. Heard, 367 F.3d 1275, 1279 (11th Cir.2004) ("A face-to-face anonymous tip is presumed to be inherently more reliable than an anonymous telephone tip....”). Even assuming that the original 911 call can be deemed anonymous, Officer Clifton followed up on the call and met face-to-face with the informant at the motel room from which the call was placed. During this meeting, the informant identified the driver of a white Cadillac as the man with a gun, initiating the pursuit of the vehicle.

. In Christmas, we found reasonable suspicion on facts similar to those here. In that case, the officers relied on a face-to-face tip from an unidentified neighborhood resident who reported men with guns and drugs at an address two doors down from her residence. Id. at 143-45.

. A contrary holding would prevent a police officer in a high-crime area from stopping a person who, according to an informant via a face-to-face conversation with police, has a gun. As we explained in Christmas, “[a] community might quickly succumb to a sense of helplessness if police were constitutionally prevented from responding to the face-to-face pleas of neighborhood residents for assistance.” 222 F.3d at 145.

. The dissent’s reliance on United States v. Neely, 564 F.3d 346 (4th Cir.2009), is misplaced. In that case, the officer stopped Neely for a minor traffic infraction and had no suspicion that Neely possessed a firearm or was otherwise dangerous at all. Id. at 352. Even so, we described the issue as "close.” Id. Here, of course, the officers stopped Griffin because they suspected that he possessed a firearm in a high crime area.

. In viewing the search for reasonableness, the presence of onlookers mingling around this stop in a high-crime area, including one individual purporting to know Griffin who approached the scene, also contributed to danger posed to the officers, even though this does not add to the danger posed by Griffin acting alone. See Mora v. City of Gaithersburg, 519 F.3d 216, 222 (4th Cir.2008) ("We are to approach the Fourth Amendment ... with at least some measure of pragmatism.”).

. We note that to the extent that the district court relied on the discovery of the pistol as a justification for the search, this was error. See J.L., 529 U.S. at 271, 120 S.Ct. 1375 ("The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search.”). Such error, however, was harmless in this case because the court's other findings were sufficient to justify the search.

.Because Griffin was not yet arrested at the time of the search, Arizona v. Gant, - U.S. -, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), is inapposite. That case held that police may search a vehicle incident to a recent occupant’s arrest as authorized by Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) "only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search.” Gant, 129 S.Ct. at 1719. This reasoning does not extend to protective searches under Long because in a Teriy stop where the suspect has not been arrested, "the possibility of access to weapons in the vehicle always exists, since the driver or passenger will be allowed to return to the vehicle when the interrogation is completed.” Id. at 1724 (Scalia, J., concurring).