**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 10-4236**

———————

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

     v.

PRESTON LEVONNE BUIE,

                Defendant - Appellant.

———————

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. William L. Osteen, Jr., District Judge. (1:08-cr-00347-WO-1)

———————

Submitted: July 13, 2011           Decided: July 27, 2011

———————

Before DUNCAN, KEENAN, and DIAZ, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

Robert L. McClellan, IVEY, MCCLELLAN, GATTON & TALCOTT, LLP, Greensboro, North Carolina, for Appellant. John W. Stone, Jr., Acting United States Attorney, Greensboro, North Carolina, Graham T. Green, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Winston-Salem, North Carolina, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Preston Levonne Buie ("Buie") appeals his conviction and sentence for possession with intent to sell and deliver cocaine under 21 U.S.C. §§ 841(a)(1) and (b)(1)(c). Buie challenges the district court's denial of his motion to suppress, arguing that the officer who stopped him lacked the requisite reasonable suspicion. Buie also challenges the district court's application of three two-level sentencing enhancements for specific offense characteristics (firearms), obstruction of justice, and reckless endangerment during flight, under United States Sentencing Guidelines §§ 2D1(b)(1), 3C1.1, and 3C1.2. For the reasons that follow, we affirm the district court's denial of Buie's motion to suppress and its application of the sentencing enhancements.

I.

The Winston Salem Police Department ("Police Department") learned of Buie during a criminal investigation of Cedric Denard Ingram ("Ingram"), Buie's passenger during the incident leading to Buie's arrest. In January 2008, the Police Department initiated the investigation in response to receiving information that Ingram was distributing narcotics in Winston-Salem, North Carolina. Detective Cecilia Singletary ("Singletary") of the Police Department's Narcotics Division led

2

several officers and criminal informant Salahuddin Hall ("Hall") in the surveillance of Ingram. Hall placed Buie at Ingram's residence during the manufacture and distribution of cocaine and in the car as Ingram's driver during drug transactions. Hall also noted that Ingram was frequently armed at home and during drug transactions. A background check further revealed that Ingram had previous charges for trafficking cocaine and a history of fleeing when stopped by police personnel.

On May 5, 2008, the Police Department planned to have Hall make a controlled cocaine purchase from Ingram. In preparation, Singletary briefed law enforcement, including Highway Patrolman James Pickard ("Pickard"), who would later apprehend Buie. Singletary informed them of Ingram's outstanding warrants for drug possession and fleeing from the police. She indicated that the drug purchase would involve an informant, that Ingram might be armed, and that he would most likely be driven by an older gentleman. Ultimately Hall was unable to make contact with Ingram so no purchase occurred that day.

On May 14, 2008, Singletary used Hall to arrange another controlled cocaine purchase and again briefed both the Police Department and Highway Patrol on the operation. She informed them of the sale's location and that Ingram would again be driven by an older man in a gold Jeep.

3

That afternoon, Singletary and other members of the Police Department followed Hall to the meeting location. Hall met with Ingram and the older man, who later identified himself as Buie, in the gold Jeep and arranged for them to sell cocaine to a purchaser in Boone, North Carolina. Hall then returned to his own car to radio Singletary, informing her that Ingram was armed and had drugs in the vehicle, and that he, Ingram, and Buie planned to drive to Boone to distribute the drugs. Singletary radioed this information to both Police and Highway Patrol, including Pickard. Other officers informed Pickard, who had positioned his patrol car near Highway 451, that the Jeep, driven by Buie, was speeding toward the highway.

Pickard followed the vehicle onto the highway where he estimated Buie was driving seventy miles an hour, five miles per hour over the speed limit. Pickard intended to stop the vehicle based on the information from Singletary. However, in compliance with Highway Patrol protocol, which recommends that a speeding violation be verified even if there is a preexisting reason for a stop, Pickard used a monitoring device to determine that the vehicle was in fact exceeding the speed limit. Pickard turned on his blue lights and siren to signal Buie to pull over.

On the shoulder of the road, Pickard exited his patrol car and approached Buie's vehicle. Just before he reached it, however, Buie drove away. Pickard returned to his car and

4

followed. Other officers joined the pursuit and later testified that at times Buie drove in excess of one hundred and ten miles per hour. Pickard observed Ingram holding a bag out of the passenger window and allowing the white powder it contained to fall along the highway. Samples of the substance were collected by the police shortly thereafter.

Buie exited the highway and continued down residential streets before stopping in the parking lot of an elementary school. Buie exited the vehicle from the driver-side door, after which two firearms were thrown from the same door. Ingram then exited from the passenger-side door. Both men were quickly apprehended. The white powder collected from the highway and elementary school parking lot was later tested and determined to be a form of cocaine.

On September 29, 2008, a grand jury indicted Buie on one count of possession with intent to distribute approximately 260 grams of a mixture containing detectable amounts of cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(c), one count of possession of a firearm in furtherance of a drug trafficking scheme, in violation of 18 U.S.C. § 924 (c)(1)(A)(I), and one count of felon in possession of a firearm, in violation of U.S.C. § 922(g)(1).

On February 13, 2009, Buie filed a motion to suppress evidence obtained during and after the initial stop of his

5

vehicle, arguing the stop was not supported by reasonable suspicion. Buie testified that upon entering the highway he placed his car in cruise control at sixty-five miles an hour, and therefore never exceeded the speed limit. Buie also testified that he was unaware Ingram threw anything out of the vehicle, and that he did not know Ingram well and had no knowledge that the two firearms and cocaine were in the vehicle. Buie explained that he ran from the police because of the outstanding warrants for his arrest and because he was carrying a crack pipe. The district court denied the motion on the ground that Pickard had reasonable suspicion to believe Buie was speeding, which alone was sufficient, and that he also "had probable cause to believe that the defendant's vehicle contained contraband based upon the information conveyed to Trooper Pickard by Detective Singletary and the police." J.A. 139-40.

A jury subsequently found Buie guilty of possession with intent to distribute. At sentencing, the district court added three two-level enhancements to Buie's sentence due to specific offense characteristics (firearms) under U.S.S.G. § 2D1.1(b)(1), obstruction of justice under U.S.S.G § 3C1.1, and reckless endangerment during flight under U.S.S.G. § 3C1.2, and therefore increased his sentence to a total of 110 months. This appeal followed.

6

II.

On appeal, Buie challenges the denial of his motion to suppress and the court's application of each of the three two-level sentencing enhancements. We consider each argument in turn.

A.

Buie first challenges the district court's denial of his motion to suppress. When reviewing a district court's denial of a motion to suppress, "we review factual findings for clear error and legal determinations de novo," and view "the evidence in the light most favorable to the Government." United States v. Green, 599 F.3d 360, 375 (4th Cir. 2010).

1.

Buie first argues that the district court erred by concluding that Pickard's stop was warranted. This argument is unavailing. The stop was supported by reasonable suspicion once Pickard witnessed Buie speeding on the highway.[1]

---

[1]Although the district court found both probable cause and reasonable suspicion, under the circumstances, the presence of either justifies a vehicular stop. See Carroll v. United States, 267 U.S. 132, 149 (1975); United States v. Griffin, 589 F.3d 148, 157 (4th Cir. 2009). Because the district court's findings support the conclusion that Pickard met the standard of reasonable suspicion, there is no need to address the question (Continued)

7

To support a finding of reasonable suspicion, a police officer "must offer 'specific and articulable facts' that demonstrate at least a 'minimal level of objective justification' for the belief that criminal activity is afoot." United States v. Branch, 537 F.3d 328, 335 (4th Cir. 2008) (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)). Observing a traffic violation satisfies this standard and allows a police officer to proceed with a stop. Id. at 338. Here, Pickard testified that he not only estimated Buie's speed to be five miles over the speed limit, but also verified it using an official device. The district court's decision to credit this testimony over Buie's is not clearly erroneous, and such a speeding infraction supplies the requisite reasonable suspicion to justify Pickard's stop of Buie's vehicle.

Based on our review of the facts as found by the district court, we conclude that Pickard's stop of Buie was

---

of probable cause. In any event, we find that the probable cause standard is also met. An officer may stop a vehicle for probable cause if he has the reasonable belief that "an automobile or other vehicle contains that which by law is subject to seizure and destruction." Carroll, 267 U.S. at 149. Pickard's knowledge that Buie and Ingram were carrying contraband and weapons justified his vehicular stop under this standard. Buie's contentions that this knowledge was speculative and stale are unfounded. The information came from a reliable informant and was radioed to Pickard moments before the stop occurred.

amply supported by reasonable suspicion and affirm the district court's denial of Buie's motion to suppress.

## B.

Buie next argues that the district court improperly applied three two-level enhancements for specific offense characteristics (firearms) pursuant to U.S.S.G. § 2D1.1(b)(1), obstruction of justice pursuant to U.S.S.G. § 3C1.1, and reckless endangerment during flight pursuant to U.S.S.G. § 3C1.2. We review the district court's factual findings for clear error and legal interpretations of the guidelines de novo. United States v. Green, 599 F.3d 360, 375 (4th Cir. 2010).

## 1.

Buie argues that the enhancement for possession of a firearm was improperly applied because he did not know firearms were in the vehicle and the jury found him not guilty of gun possession. This argument lacks merit.

Section 2D1.1(b)(1) of the U.S. Sentencing Guidelines provides for a two-level enhancement to a defendant's base offense level "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). Unless it is "clearly improbable that the weapon was connected to the offense," possession only requires that the weapon be present during the

relevant illegal activity.  Id. at comment (n.3).  Here, the district court supportably found by a preponderance of the evidence that two guns were present in the car Buie drove during Ingram and Buie's drug transaction.  This fact alone is enough to support application of the enhancement.

2.

Second, Buie argues that the district court erred in applying an enhancement for obstruction of justice under U.S.S.G. § 3C1.1.  The district court applied this enhancement because it found that Buie perjured himself through his statements that he had no knowledge of the presence of weapons or cocaine within the vehicle.  Buie maintains that his testimony was true.

Perjury occurs when a witness, "testifying under oath or affirmation . . . gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory."  United States v. Dunnigan, 507 U.S. 87, 94 (1993).  Because the district court's finding of perjury is ultimately based on a credibility determination that is not subject to appellate review, United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989), we find the district court did not err in its application of U.S.S.G. § 3C1.1.

10

3.

Buie finally argues that the district court erred in its application of an enhancement for reckless endangerment during flight pursuant to U.S.S.G. § 3C1.2. This enhancement is appropriate "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2. Buie contends that since no accident occurred and no person was harmed during the chase, his flight from police was not reckless. However, the plain language of the guideline provides for application of the adjustment when the defendant is resisting arrest and creates a substantial <u>risk</u> of serious bodily injury, even if no injury occurs. <u>See</u> <u>United States v. Carter</u>, 601 F.3d 252, 255 (4th Cir. 2010).

Buie fled from police at speeds upwards of one hundred miles per hour, during which he weaved between cars on the highway. He continued his flight through residential streets and to an elementary school parking lot. We agree with our sister circuits that engaging in a high speed chase on the highway and through residential streets is enough to create a substantial risk of serious bodily injury. <u>See, e.g.</u>, <u>United States v. Jimenez</u>, 323 F.3d 320, 324 (5th Cir. 2003) ("[L]eading police officers on a high speed chase . . . by itself created a substantial risk of serious injury, which warranted an

11

adjustment for reckless endangerment during flight." (internal quotations omitted).[2] Thus, there was no error in the district court's application of this enhancement.

## C.

For the foregoing reasons, the judgment of the district court is affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

---

[2]See also United States v. Luna, 21 F.3d 874 (9th Cir. 1994)(finding that running three stop signs in a residential area and leaving an unattended vehicle rolling constituted a substantial risk of serious bodily injury or death to other motorists or pedestrians); United States v. Chandler, 12 F.3d 1427, 1433 (7th Cir. 1994) (holding that travelling between 35 and 50 mph through a residential area, and swerving, constituted reckless endangerment); United States v. Sykes, 4 F.3d 697, 700 (8th Cir. 1993) (holding that failure to pull over and thereby compelling police to force defendant off the road constituted reckless endangerment).