**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-4777**

UNITED STATES OF AMERICA,

             Plaintiff - Appellee,

      v.

MARKUS DAVIS, a/k/a Shawn Mark Davis,

             Defendant - Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Thomas E. Johnston, Chief District Judge. (2:17-cr-00035-1)

Submitted: June 29, 2018                                Decided: July 24, 2018

Before TRAXLER, KING, and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Christian M. Capece, Federal Public Defender, Jonathan D. Byrne, Research & Writing Specialist, George H. Lancaster, Jr., Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant. Michael B. Stuart, United States Attorney, J. Matthew Davis, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

After unsuccessfully moving to suppress evidence recovered from a traffic stop patdown, Markus Davis pleaded guilty to possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) (2012). Davis' conditional plea agreement reserved his right to contest the propriety of the district court's suppression ruling. On appeal, Davis challenges the constitutionality of both the traffic stop and the ensuing patdown. For the reasons that follow, we affirm.

"In considering the appeal of a denial of a motion to suppress, we review the district court's legal conclusions de novo and its factual findings for clear error." *United States v. Bullette*, 854 F.3d 261, 265 (4th Cir. 2017) (internal quotation marks omitted). "We further construe the evidence in the light most favorable to the government—the prevailing party below." *United States v. Hill*, 849 F.3d 195, 200 (4th Cir. 2017) (internal quotation marks omitted).

Shortly after midnight on February 21, 2017, law enforcement received two 911 calls from a person who claimed that two occupants of a maroon Chevrolet Caprice had driven by his house waving guns and talking about shooting people. In the early morning hours of the following day, February 22, Sergeant Steven Webb spotted a car matching the description of the vehicle involved in the brandishing incident. As Webb pursued the maroon vehicle, searching for a reason to conduct a traffic stop, he observed that the driver was not wearing his seatbelt. After asking another officer to run the vehicle's tags, Webb learned that the two registered owners of the vehicle had recently completed federal prison sentences for firearms offenses. The maroon vehicle then pulled off to the

2

side of the road, at which point Webb turned on his lights and initiated a traffic stop. The driver, after initially opening his door, complied with Webb's command to remain in the car.

Upon approaching the vehicle, Webb recognized the driver as Davis, whom Webb had previously encountered during a strip search in which Davis became resistant and started fighting with several police officers in a holding cell bathroom. Davis, rather than exiting the vehicle as requested, stayed in his car and began reaching for something on the passenger's side. Roughly two minutes after Webb instructed Davis that he needed to be searched, Davis stepped out of his vehicle, at which time he was arrested for resisting and obstructing. The resulting search uncovered a loaded firearm on Davis' person.

We analyze the constitutionality of a traffic stop under the two-prong standard announced in *Terry v. Ohio*, 392 U.S. 1 (1968). *United States v. Williams*, 808 F.3d 238, 245 (4th Cir. 2015). Because Davis offers no challenge to the scope of the traffic stop, we need only determine whether the stop was "legitimate at its inception." *United States v. Hill*, 852 F.3d 377, 381 (4th Cir. 2017). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996).

Davis acknowledges that pretextual traffic stops are not per se unreasonable, *see id.* at 811-13, but argues that Webb's ulterior motive for initiating the traffic stop should factor into the assessment of Webb's credibility. However, it is the province of the suppression court, not this court, to judge a witness' credibility. *United States v. Patiutka*, 804 F.3d 684, 689 (4th Cir. 2015). For this reason, we accord great deference

to the district court's credibility determinations, reviewing the court's factual findings only for clear error. *United States v. Palmer*, 820 F.3d 640, 653 (4th Cir. 2016). Having examined Webb's testimony and the video footage from Webb's dashcam, we are unconvinced that the district court clearly erred in crediting Webb's assertion that he could see that Davis was not wearing a seatbelt. *See United States v. Locklear*, 829 F.2d 1314, 1317 (4th Cir. 1987) ("Absent compelling evidence to the contrary, this Court declines to overturn a factual determination founded on witness demeanor and credibility."). Because Webb had probable cause to believe that Davis had committed a traffic violation, we discern no error in the district court's determination that the traffic stop was lawful.

"To justify a patdown of the driver or a passenger during a traffic stop . . . , the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 327 (2009). The reasonable suspicion standard requires an objective inquiry into "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *United States v. Powell*, 666 F.3d 180, 186 (4th Cir. 2011) (internal quotation marks omitted). We measure reasonable suspicion against the totality of the circumstances and "will not find reasonable suspicion lacking based merely on a piecemeal refutation of each individual fact and inference." *United States v. George*, 732 F.3d 296, 299-300 (4th Cir. 2013) (internal quotation marks omitted).

Davis attacks each of the factors supporting the district court's finding of reasonable suspicion. Specifically, Davis assails the court's reliance on his criminal

4

history and his prior interaction with Webb. Davis also contends that his behavior on the night of his arrest was not unusually suspicious. Lastly, Davis disputes the reliability of the vehicle description provided by the 911 caller.

We are unpersuaded by Davis' arguments. First, Davis' prior firearm offense was certainly probative of whether he was armed and dangerous. *See United States v. Holmes*, 376 F.3d 270, 278 (4th Cir. 2004). Although "[a] prior criminal record is not, standing alone, sufficient to create reasonable suspicion," *United States v. Foster*, 634 F.3d 243, 246 (4th Cir. 2011) (internal quotation marks omitted), Davis' criminal history was but one of several factors that contributed to Webb's reasonable suspicion. Second, based on his prior encounter with Davis, Webb could have reasonably concluded that, if Davis previously attempted to fight several officers in a confined space, he might pose a danger when approached in an uncontrolled environment in the wee hours of the night. *See George*, 732 F.3d at 300 ("[T]hat the stop occurred late at night may alert a reasonable officer to the possibility of danger."); *Powell*, 666 F.3d at 186 ("The determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior . . . ." (internal quotation marks omitted)). Third, we agree with the district court that Davis' hand movements in the cabin of his vehicle lent support to a finding of reasonable suspicion. *See George*, 732 F.3d at 299 ("A suspect's suspicious movements can . . . be taken to suggest that the suspect may have a weapon.").

Fourth, contrary to Davis' claim, Davis' vehicle and the vehicle from the brandishing incident were markedly similar, sharing the same make, model, color, and approximate age. Finally, we reject Davis' attempt to discredit the 911 caller. Although

5

the caller falsely identified himself on the phone, he later met with law enforcement at his residence, where he provided his name and a signed statement. By exposing himself "to the repercussions of misleading or deceiving the police," *United States v. Christmas*, 222 F.3d 141, 144 (4th Cir. 2000), the caller adequately allayed the credibility concerns stemming from his initial misrepresentation. Viewing the totality of the evidence, we conclude that Webb's patdown of Davis was supported by reasonable suspicion.

Accordingly, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*